GEORGE SINCLAIR, APPELLANT, vs. JOHN D. GRAY, APPELLEE.

1. Where notice under the statute (Thomp. Dig., 343, § 1,) is given to the adverse party in a suit to produce books or papers, the regular time to call for the production is not until the party who requires them has entered upon his case before the jury, until which time the other party may refuse to respond to the notice.

2. Before the Court will proceed to give judgment against a party failing or refusing to produce the book or paper demanded, it must be satisfied that the book or paper is in the possession or under the control of the party and that it is *material* to the issue.

3. Where the book or paper demanded is only a link in the evidence, the party giving the notice must show its *materiality* by the prior introduction of other testimony.

4. The provision of the statute (Thomp. Dig., 348,) which dispenses with proof of the *execution* of bonds, notes, &c., unless the same be denied by the plea of the defendant under oath, does not apply to the *indorsement* or *assignment* of such instruments.

5. Where the defendant fails to tender a defense to any particular count of the declaration, the plaintiff is entitled to a judgment upon that particular count as for a default; but such judgment must be given by the Court—it is not the subject of instruction to the jury.

6. It is a settled principle that none but a party holding the legal title to an instrument can maintain an action upon it in a common law Court; and to obtain a recovery upon the same, he must establish such title by competent evidence.

This case was decided at Marianna.

Appeal from Franklin Circuit Court.

The appellant instituted his action of assumpsit by attachment against the appellee on an order or check, of which the following is a copy, viz:

ST. JOSEPH, May 17, 1840.

President of the L. W. and St. Joseph Railroad Company will pay to James Black, or order, one hundred and fifty-three dollars, and charge the same to account of

Your ob't serv't,

JOHN D. GRAY.

James Black endorsed the said order to William Hawkins, and the latter endorsed it to the plaintiff Sinclair, as alleged in the declaration, which was in the usual form and which contained the common money counts. On the face of the order was a note of protest "for non-payment 8th October, 1840," by Hez. R. Wood, Notary Public.

The defendant pleaded the statute of limitations, which was withdrawn before the trial; also three additional pleas, in which he alleged, first, that the order or check sued on had never been presented; second, that it had never been protested, and, thirdly, that it had never been transferred or assigned by the drawee James Black to William Hawkins, or by Hawkins to the plaintiff.

At the first trial of the case, a non-suit was taken by the plaintiff, but at the same term leave was granted by the Court to reinstate the case.

The record shows that afterwards the following notice was served on the defendant's attorney, viz :

" *To John D. Gray, def''t, or his att'y, T. J. Eppes, Esq.:*

"SIR: You will take notice that upon the trial of this cause in said Court you will be required to produce the following paper writings, in possession of the defendant, which said writings are pertinent to the issue joined in this case, to wit: the notice of protest made by Hez. Wood, Notary Public, the notice of non-payment and the notice of presentment, which said notices were served upon the said defendant by the said Hez. Wood, Notary Public, according to law.

D. P. HOLLAND, *Pltf's Att'y.*"

The record contains the following answer, made by the defendant to the above notice, viz:

"The said defendant objects to the notice within as calling upon him to prove a negative. Subject to this objection, he answers: First, that he has not in his possession, and never had, any of the papers and writings named and

called for in within notice, and, generally answering, he denies the right in law of the plaintiff to demand the same, &c.

JOHN D. GRAY,

*by* T. J. EPPES, *Att'y.* "

The action taken by the plaintiff on the trial and the instructions asked, appear in the following bill of exceptions, contained in the record:

"Be it remembered, that upon the calling of this cause upon the trial docket, the parties by their attorneys announced themselves as ready for the trial thereof, when and before a jury was called, the plaintiff by his attorney moved for judgment upon the ground that the defendant had not produced certain papers which by notice filed and served upon the defendant he was required to produce under the statute in such case, &c., which motion the Court overruled, holding that the statute authorizing such notice would be sufficiently complied with by the production of such papers upon the trial before the jury, and under this ruling the defendant had leave to produce such papers upon the trial when the jury should be empannelled or the opportunity to discharge himself, if he could, upon his answer to the notice. To which ruling of the Court the defendant by his counsel excepted.

" Thereupon a jury were empannelled, and the defendant moved the Court for judgment upon the ground, as insisted by him, that the papers required by the notice to be produced by the defendant were pertinent to the issue joined, and that the answer of the defendant to the notice was insufficient and uncertain; which said motion was overruled, and thereupon the defendant by his counsel excepted to such ruling of the Court.

"Thereupon the plaintiff produced James Penn, who testified that Hezekiah Wood had been dead some three years; that he died abroad, somewhere about Panama, and identi-

8

fied the memorandum on the face of the draft sued on as the hand writing of the said Wood. Thereupon the plaintiff by his counsel offered to prove by the said signature of said Wood, and by parol testimony, that the said Wood was a Notary Public of the Territory of Florida, residing at St. Joseph, in Florida. The Court ruled that the plaintiff must show the commission or appointment of the said Wood as a Notary Public, and that parol testimony was not admissible to prove the same, unless it should be first proven that the superior evidence of his authority to act as a Notary Public had been lost or destroyed. To which ruling of the Court the plaintiff by his counsel excepted.

"Thereupon the plaintiff introduced H. D. Darden, a witness, who testified that the writing on the back of the draft sued on (other than the assignment) was in the handwriting of R. J. Moses, who he had seen acting as Secretary and Cashier of Lake Wimico and St. Joseph Railroad Company, but that he did not *know* that said Moses was the Cashier of said Company. Whereupon the plaintiff offered to prove by parol testimony that the said Moses was the Secretary and Cashier of said Company, and also offered to prove the same by the signature of said Moses to a deed purporting to be signed and sealed by him as Secretary or Cashier of said Company.

"The Court ruled, that the books of the Company must be produced to prove that said Moses was the Secretary or Cashier of said Company, unless the same were proven to be lost or destroyed, so as to let in secondary evidence of the fact; and the Court ruled out the testimony stated above as being offered by the plaintiff. To which ruling the plaintiff by his counsel excepted. Thereupon the plaintiff by his counsel asked the Court to charge the jury as follows, to wit:

"1st. That it was not necessary for him to prove the assignment of the draft by Gray to Black, of Black to Haw-

kins, or of Hawkins to plaintiff, in order to entitle him to recover in this suit upon the draft.

"2d. That inasmuch as there were no pleas to the money counts in the declaration that the plaintiff was entitled to recover.

"3d. That the draft sued on was evidence under the count in the declaration describing it as a promissory note.

"Which three several instructions, so asked for by the plaintiff, were refused by the Court. To which refusal of the Court to give such instructions the plaintiff by his counsel excepted."

The jury returned a verdict for defendant, and plaintiff appealed.

*D. P. Holland* for appellant.

*T. J. Eppes* for appellee.

DuPONT, C. J., delivered the opinion of the Court.

This was an action of assumpsit, commenced in the Circuit Court of Franklin county, by Sinclair, the appellant, against Gray, the appellee, upon an instrument of writing, as follows, to wit:

"St. Joseph, May 17th, 1840.

"President of the L. W. and St. Joseph R. Road Company will please pay to James Black or order one hundred and fifty-three dollars, and charge the same to acct. of

"Your O. S.,     JOHN D. GRAY."

This paper was endorsed by James Black, the payee, to William Hawkins, and by Hawkins to Sinclair, who instituted the suit, as endorsee thereof, and filed his declaration in the usual form. At the first trial of the cause, the plaintiff having failed to make out his case, took a non-suit, with leave to reinstate, which was allowed by the Court. The defences to the action are embraced in the following pleas, viz:

1st. Non-presentation of the draft for payment.

2d. That the draft was not duly protested.

3d. A denial of the transfer to the plaintiffs by endorsement.

A plea of the statute of limitation was also filed and replied to, but the record shows that this plea was withdrawn previous to the trial. It also appears that after the cause had been reinstated, and before the last trial, the plaintiff caused to be served upon the defendant's counsel the following notice, to wit:

"To John D. Gray, defendant, or his attorney, T. J. Eppes, Esq.:

"Sir: You will take notice that upon the trial of this cause, in said Court, you will be required to produce the following paper writings, in possession of defendant, which said writings are pertinent to the issue joined in this case, to wit: the notice of protest made by Hez. Wood, notary public, the notice of non-payment, and the notice of presentment, which said notice was served upon the said defendant by the said Hez. Wood, notary public, according to law.

"D. P. HOLLAND, Plaintiff's Attorney."

The bill of exceptions shows that upon calling the cause for trial, the parties announced themselves ready; whereupon, and *before the jury were sworn*, the plaintiff, by his attorney, moved for judgment, upon the ground that the defendant had not produced the papers called for in the notice. The Court refused to give judgment, holding that the defendant was not bound to respond to the notice until after the jury should have been empanelled and sworn, to which ruling the plaintiff excepted.

The bill of exceptions further shows that after the jury had been empannelled and sworn the defendant made the following answer to the notice, viz: "The defendant objects to the notice within, as calling upon him to prove a negative. Subject to this objection, he answers: First, that he has not in his possession, and never had, any of the papers

and writings named and called for in within notice, and generally answering, he denies the right in law of the plaintiff to demand them.             JOHN D. GRAY,
                    " By T. J. Eppes, Attorney.

Upon the exhibition of this answer, the attorney for plaintiff again moved for judgment, upon the ground that the answer was insufficient and uncertain. The Court refused to grant the motion, which was excepted to, and this, together with the former ruling, constitutes the first error assigned in this Court.

In order to understand the question involved in this assignment of error, we will set out the section of the statute under which the judgment was claimed by the plaintiff. It is in the following words, viz:

" The Courts of this State shall have power, on the trial of causes cognizable before them respectively, if it shall be satisfactorily proved that ten days' notice was previously given to the opposite party, or to his, her or their attorney, to require the party notified as aforesaid to produce books and other writings in his, her or their possession, power or custody, which shall contain evidence pertinent to the issue; and if either party shall fail to comply with such order, or to satisfy the Court why the same is not complied with, it shall be lawful for the Court, if the party so refusing be plaintiff, to give judgment for the defendant, as in case of non-suit; and if defendant, to give judgment against him or her by default: *Provided*, that the party requiring the production of the books or papers as aforesaid shall in all cases satisfy the Court of their materiality in the causes therein depending." Thom. Dig.; 343, sec. 7, § 1.

This statutory provision seems to have been designed only to aid the practice as it stood at common law. Under that practice, where books or papers were alleged to be in the custody or control of the opposite party, and were shown to be material and admissible as evidence in the cause, it was

permitted to a party, upon giving reasonable notice to his adversary, to require the production of such books or papers, to be used as evidence on the trial. But if the requisition thus made were disregarded by the party so notified, then the party making the requisition was permitted to resort to *secondary* evidence, such as copies of the original, or proof of their contents. This was the only advantage gained by the giving of the notice. Our statute goes further, and affixes a positive *penalty* on the party who refuses or neglects to respond satisfactorily to the requisition. If the recusant party be plaintiff, the penalty which he incurs is judgment of *non-suit*, and if defendant, a judgment by *default* is entered against him. This is the only particular in which the practice is altered by this section of the statute. In every other particular the practice in reference to the production of books and papers stands as it did at common law.

The common law practice is thus stated by Mr. Greenleaf, in his Treatise on Evidence: "When the instrument or writing is in the hands or power of the adverse party, there are in general, except in the cases above mentioned, no means at law of compelling him to produce it; but the practice in such cases is to give him or his attorney a regular notice to produce the original, not that on proof of such notice he is compelled to give evidence against himself, but to lay a foundation for the introduction of secondary evidence of the contents of the document or writing, by showing that the party has done all in his power to produce the original." Greenleaf on Evidence, 710, § 560.

It is also laid down as a rule at common law, that before a party will be permitted to go into secondary evidence of the contents of the paper called for, he must prove the existence of the original, and upon the most obvious principles of propriety and sound reason he will be required to show the *materiality* of the evidence sought to be used. This showing is expressly required to be made by the statute re-

lied upon by the counsel for the plaintiff. In the proviso to the section, it is provided that "the party requiring the production of the books or papers, as aforesaid, shall in all cases satisfy the Court *of their materiality*," &c.

In view of this essential pre-requisite, a rule has been adopted at common law with reference to the particular point of time in the progress of the cause at which the response to the notice to produce may be demanded. It is laid down that "*the regular time for calling for the production of papers* is not until the party who requires them has entered upon his case, until which time the other party may refuse to produce them, and no cross-examination as to their contents is usually permitted."—1 Green. on Ev., 712, § 563.

If such be the rule at common law, "when the only benefit to the party giving the notice is the privilege of going into secondary evidence," we can perceive no good reason why the same rule should not prevail in the practice under the statute, especially when it is brought to mind that the *penalty* visited upon the adverse party is the infliction of a judgment against him for his recusancy. We think, then, that the Judge below very properly refused the motion which required the defendant to respond to the notice before the jury had been called or the plaintiff had entered upon his case.

This disposes of the first exception embraced in the first error assigned, and we are now brought to the consideration of the second exception embraced in the same assignment, viz: the refusal of the Judge to give a judgment against the defendant *after* the jury had been *empannelled* and *sworn*. At this stage of the trial, it appears by the bill of exceptions, that the defendant responded to the notice by the answer set forth in the statement of the case.

This brings us to the consideration of the *materiality* of the paper demanded by the notice. It must be recollected

that the plaintiff, as endorsee of an inland bill of exchange, was suing the maker, and that the paper demanded to be produced was the notice of protest which was alleged to be in the possession of the defendant.   Now, it is very obvious that before this paper could become *material* to the support of the right of the plaintiff to recover upon the bill, it was necessary that he should have established his legal right to property in the bill.   This he had not done at the time when his demand for judgment was made, nor, indeed, did he do so at any time afterwards.   Of what avail would it have been to *him*, even if the defendant had voluntarily acknowledged due and legal notice of the protest?   Before he could avail himself of this acknowledgment as matter of evidence to support his right to a recovery upon the bill, he must have shown his legal right to the same by proper proof of the several endorsements intervening between the payee and himself.   This he had not done, nor indeed did he make any effort so to do at any time during the progress of the trial.   Without feeling ourselves called on to pronounce upon the *sufficiency* or *insufficiency* of the defendant's response to the notice, we are very confident that at the stage of the trial at which the judgment was demanded by the plaintiff, he had not laid such a foundation as to make the paper demanded *material* to the issue before the jury.   For these reasons, we think the Judge below was correct in refusing the judgment asked for, and we therefore overrule the second exception contained in the bill of exeptions; and this disposes of the first error embraced in the assignment.

The third and fourth exceptions relate to attempts to prove *indirectly* the presentation of the bill to the drawee and a protest for non-payment, but as the conclusions which we have arrived at upon subsequent exceptions are decisive of the cause, it is unnecessary to examine these further than to remark, that of all subjects of evidence there is none to

Sinclair vs. Gray.—Opinion of Court.

which greater strictness is applied than to the proof of notice of protest.

The next error assigned is as to the refusal of the Court to give to the jury certain instructions which were asked by the plaintiff's counsel. These instructions are as follows, viz:

"1st. That it was not necessary for him (plaintiff) to prove the assignment of the draft by Gray to Black, of Black to Hawkins, or of Hawkins to plaintiff, in order to entitle him to recover in this suit upon the draft.

"2d. That inasmuch as there were no pleas to the money counts in the declaration, the plaintiff was entitled to recover.

"3d. That the draft sued on was evidence under the count in the declaration describing it as a promissory note."

In support of the first instruction asked for, the counsel for the appellant relies upon the statute in relation to suits brought upon "writings, whereby money is promised or secured to be paid," and the effect of endorsing or assigning such writings. The statute reads as follows, viz:

"It shall not be necessary for any person who sues upon any bond, note, covenant, deed, bill of exchange, or other writing, whereby money is promised or secured to be paid, to prove the execution of such bond, note, covenant, deed, bill of exchange or other writing, unless the same shall be denied by the defendant under oath.

"2d. The assignment or endorsement of any of the forementioned instruments of writing shall vest the assignee or endorsee thereof with the same rights, powers and capacities as might have been possessed by the assignor or endorser, and the assignee or endorsee may bring suit in his own name, nor shall it be necessary for the assignee or endorsee of any instrument assignable by law to set forth in the declaration the consideration upon which such assignment or endorsement was made, nor to prove such consideration, unless

the same shall be impeached by the defendant under oath."
Thomp. Dig., 348.

Under the operation of these provisions of the statute it is
insisted by the counsel for the plaintiff, that, being invested
"with the same *rights, power* and *capacities* as might have
been possessed by the assignor or endorser," he was not
bound to prove the fact of endorsement, inasmuch as the
plea denying the endorsement had not been verified by the
oath of the defendant. The idea seems to be that the pro-
vision of the statute which dispenses with proof of the
*execution* of the instrument sued on, unless denied under
oath, is also applicable to proof of the *endorsement* or *as-
signment* of the same. But, for very obvious reasons, we
think that such ought not to be the construction given to
this statute. It may be of vital interest to the maker that
the holder or assignee should establish, by competent proof,
his *legal title* to the instrument, in order that he may be
protected from making payment to a wrong party. Besides,
this statute is in derogation of the common law, and is there-
fore not entitled to as liberal a construction as such an ap-
plication of its provisions would call for. And we the more
readily incline to this interpretation of the statute from the
seeming limitation which occurs in the last clause of the
second paragraph, when, after providing that the assignee
or endorsee may bring suit in his own name, it goes on to
say, "nor shall it be necessary for the assignee or endorsee
of any instrument assignable by law to set forth in the de-
claration the consideration upon which such assignment or
endorsement was made, *nor to prove such consideration*, un-
less the same shall be impeached by the defendant under
oath." In this clause there is nothing said about proving
the fact of *endorsement or assignment*; it refers exclusively
to proving the *consideration* upon which the assignment may
have been made. And without intending to decide the ex-
tent of the "rights, powers and capacities" spoken of in the

Sinclair vs. Gray.—Opinion of Court.

first clause of the paragraph, it may not be out of place to remark that the view here intimated seems to be strongly fortified by the opinion of Justice Nelson, when this statute was under review in the Supreme Court of the United States, in the case of Bradford et al. vs. Williams.

In delivering the opinion in that case, Justice Nelson says: " The act just recited provides that the assignee shall be vested with the same rights, powers and capacities as might have been possessed by the obligees, and inasmuch as the bonds were uncollectable at law, in the hands of the obligees, it has been argued that, upon the words of the statute providing for the assignment and suit in the name of the assignee, they must be equally invalid and inoperative, after assignment, in his hands."

"This argument doubtless would be well founded and conclusive against the plaintiff, if the objection to the bonds was such as went to vitiate and destroy the legal force and effect of their obligation, such as usury, illegality, or the like, which would constitute a valid defense to a suit in any form in which it might be brought. So in respect to any other defense in discharge of the obligation, such as payment, release and the like; for the assignee takes the bonds subject to every defense of the description mentioned, and can acquire no greater rights by virtue thereof than what belonged at the time to the obligees. *This, we think, is what the statute intended, and is all its language fairly imports,*" &c. 4 How. S. C. Repts., 587.

The second instruction prayed for cannot be sustained upon any principle known to the practice of the common law Courts. The instruction asked for and refused was, "That inasmuch as there were no pleas to the money counts in the declaration, the plaintiff was entitled to recover."

It is undoubtedly true, that where the defendant fails to tender a defence to any particular count of the declaration, in such case the plaintiff is entitled to a judgment upon that

particular count as for a default; but such judgment must be given by the Court, and it is not the subject of instruction to the jury. The jury have no right to pass upon the pleadings. That is the exclusive province of the Court. If the plaintiff desired to avail himself of any benefit growing out of the failure of the defendant to plead to the common counts, he should, prior to submitting his case to the jury, have asked for his judgment for want of a plea, and for the award of a *writ of enquiry*, inasmuch as the common counts always proceeds for an unliquidated amount. This is the well established practice of the Courts, and we think that the Judge below very properly refused to give the instruction.

The third instruction asked, and refused, was, "That the draft sued on was evidence under the count in the declaration describing it as a promissory note." Without feeling ourselves called upon to determine whether the instrument sued on was in legal contemplation a bill of exchange, or a promissory note, we are perfectly satisfied that, under the evidence adduced at the trial, the Court acted correctly in refusing the instruction. It is a settled principle, that none but a party holding *the legal title* to an instrument can maintain an action upon it in the common law Courts, and that, to obtain a recovery upon the same, he must establish that title on the trial by competent evidence. This elementary principle, it is thought by the counsel for the appellant, has been totally abrogated, or, at least, so far modified by the statute as to dispense with the proof of the fact of assignment; but, as before stated, such is not the opinion of this Court. Now, to determine the propriety of the instruction prayed for, it is only necessary to advert to the position of the case at the time that the instruction was asked. The action was brought upon an order drawn by the defendant John D. Gray on the L. W. & St. Joseph R. R. Co., and payable to James Black or order. The paper purports to have been endorsed by Black, the payee, to William Hawkins, and by

Sinclair vs. Gray.—Opinion of Court.

him to Sinclair, the plaintiff, who instituted his suit as endorsee thereof. At the trial, there was not even an attempt made to prove these several endorsements, the proof of which fact was essential to establish the legal title of the plaintiff to the instrument. Under these circumstances, it would have been a great error in the Judge below even to have permitted the instrument to be exhibited to the jury as evidence in the case, and much graver would have been the error had he given the instruction asked.

It may not be improper, in this connection, to remark, that until the recent rules adopted by the English Courts, (and which have been closely followed for the regulation of the practice in our common law Courts,) the plea of *non-assumpsit* put in issue the endorsement as well as the making of the instrument sued on. But, under the operation of these rules, that plea is inadmissible in actions upon bills of exchange and promissory notes, and the defendant must now resort to a special plea in denial, if he wishes to put the plaintiff to the proof of the particular fact.

The points presented in this case being matters which frequently occur in practice, we have been induced to go more fully into the discussion than the amount in controversy might seem to warrant or justify.

It is ordered that the judgment of the Circuit Court be affirmed with costs.