• Very respectfully,

Geo. P. Raney, Chief Justice.

R. F. Taylor, Justice.

Milton H. Mabry, Justice.

EGBERT C. SAMMIS, PLAINTIFF IN ERROR, VS. JAMES S. WIGHTMAN, FOR THE USE, ETC., DEFENDANT IN ERROR.

1. A demurrer to pleas to a declaration was filed, and two days after a new count was added to the declaration, and seven days later the demurrer was heard. *Held*, that the pleas stood to the new count, and that the demurrer was applicable to them as standing in that relation. Section 98, p. 834, McClellan's Digest.

2. Where a final judgment has been recovered in a court of one of the states of the Union. and an action is brought thereon in a court of a sister state, the question of the former tribunal's jurisdiction of the person sued, is open to inquiry and adjudication in the latter court; but where the former court has acquired jurisdiction of the person of the defendant in judgment its adjudication of the merits of a controversy, of which it also had jurisdiction, is conclusive upon the latter court.

3. Where a party sued in one state on judgment obtained against him in a sister state undertakes to question the jurisdiction of the court of the latter state over him, his plea must negative by certain and positive averments, every fact upon which such jurisdiction can be legally predicated. If by any reason-

able intendment the facts alleged in the plea can exist, and the court rendering the judgment could still have had jurisdiction, the plea is bad.

4. A plea to an action on a judgment obtained in a sister state, which sets up that there was no service of summons on the defendant in the action resulting in such judgment, is bad, as it does not exclude the idea or fact that he may have appeared in that action. This is not the case, however, where the declaration shows that the court in which the judgment sued on was rendered, obtained jurisdiction solely by service of summons.

5. Allegations in a plea that a defendant sued in one state on a judgment obtained in a court of a sister state, did not have his day in the latter court, or that the latter court did not have jurisdiction of him, are mere conclusions of law, and bad in substance, even though they have the basis of an accompanying allegation that there was no service of summons in the action in which the judgment sued on was rendered.

6. A plea to an action on a judgment of a sister state, which sets up that the defendant was not indebted to the plaintiff therein, or denies the making of the note upon which that recovery was had, presents a matter of the merits of that controversy as to which the judgment is conclusive on the courts of the state where such judgment is sued on.

7. Allegations that no legal judgment has been rendered, and charging fraud without stating facts evidencing fraud, are mere conclusions of law and demurrable.

8. A plea that the note upon which a judgment of a court of a sister state was recovered, was not produced or filed in the cause in which such judgment was obtained is bad on demurrer. In the absence of an allegation in the plea that the law of the state where the judgment sued on was rendered, required the stated filing of the note, the demurrer does not admit that the law of that state required such filing. The same propositions are true of allegations to the effect that the judgment

sued on was procured upon proof by affidavit of the service of the summons, and upon a complaint verified by a stated affidavit.

9. The courts of this State do not take judicial notice of the laws of a sister state even in actions brought here on judgments obtained in other states; nor does the Supreme Court of the United States do so on writ of error to a state's courts in such an action unless the state court takes such notice.

10. Error in sustaining a demurrer to a plea is immaterial error where there is another plea of similar effect upon which no issue was taken.

11. Where there is no bill of exceptions it is conclusively presumed that the evidence sustained the verdict.

12. An averment of the required publication of the notice is essential to a plea of the statute of non-claim.

13. The fifteenth section of the act prescribing limitations in civil suits, Section 15, p. 734, McClellan's Digest, does not create an independent or substantive limitation upon any and all causes of action which may exist in favor of or against a testator or intestate at his death, and upon which the statute may have begun to run at such death. The sole purpose and effect of the stated section are to secure after the grant of administration, the period of six months, to executors or administrators, and one year to those having a right of action against the testator or intestate, wherever the cause of action is alive at the death of the testator or intestate, and the statute is running on it, and the period of limitation applicable to it under some other section of the statute has expired before the issue of letters testamentary or of administration, or will expire within less than six months after such issue, when the right of action is in the decedent, or within less than one year when the right of action is against the deceased. It was intended to provide for cases in which a right of action existed in or against the deceased at his death, and the statutory period controlling resort to the courts for enforcing similar

causes of action was then running, and might expire either before the grant of administration, or after such grant, and within less than "six months," or "one year," according as the cause of action may be in favor of or against a decedent.

14. The general limitations of the statute do not cease to run upon the death of a testator or intestate; on the contrary, they continue to run, and if more than six months of any period applicable to a right of action existing in a testator or intestate at his death, or more than one year, where the right of action is against the deceased, remain unexpired at the time of the grant of letters testamentary or of administration, the general limitation controls, and nothing in the fifteenth section has any application or effect. Sanderson's Administrators vs. Sanderson, 17 Fla., 820, reviewed.

15. Twenty years is the period limiting actions in this State on a judgment recovered in a sister state. A judgment was rendered in New York against a defendant on January 10, 1880, and an action thereon was commenced in this State against his administrators more than a year after the grant of letters and about four years after the recovery of such judgment, leaving nearly sixteen years of the general limitation of twenty years unexpired: *Held,* That the provisions of Section 15, of the statute of limitations, of February 27, 1872, (Section 15, page 734, McClellan's Digest), that if a person against whom an action may be brought, dies before the expiration of the time limited for the commencement thereof and the cause of action survives, an action may be commenced against his executor or administrator after the expiration of that time and within one year after the issuing of letters testamentary or administration, did not govern the action on the judgment, but, in the absence of any publication of notice under the statute of non-claim, the action was controlled solely by the twenty-year limitation, and that nearly sixteen years remained for bringing suit thereon at the time the action was instituted in this State.

16. The plea of *nul tiel record* does not present new matter, and the absence of a *similiter* to it is not ground for setting aside a verdict or arresting judgment.

17. In a declaration in an action brought in the name of W. for the use of J. and L. M., the declaration alleged an assignment of the cause of action by W. to the usees, for a valuable consideration, and defendant pleaded that W. did not assign for a valuable consideration. The plea was bad, and demurrer thereto was properly sustained.

18. An action at law may be maintained on a judgment at law in the name of a judgment creditor for the use of an assignee of the judgment, notwithstanding the act of 1881, Chapter 3241, of the Laws, Section 981, Revised Statutes, allowing the real parties to sue in their own name.

19. The plea of *plene administravit* is not admissible, in this State, in an action the purpose of which is simply to put a claim in judgment.

20. It is never error to refuse the filing of a plea that is never admissible in the action.

21. The presence in the record of a plea which has been overlooked and remains undisposed of, is immaterial where the plea is not only without merit, but the subject-matter thereof is covered by other pleas which have been properly disposed of.

22. The trial judge refused an instruction offered by the defendant, and the record after this showing, reads as follows: "And the jury having heard the charge of the court and argument of the counsel, and having considered of their verdict, on their oaths do say;" then follows the verdict: *Held*, That the record shows that the judge gave instructions to the jury on the law of the case. Duggan vs. State, 9 Fla., 916, distinguished.

23. In the absence from the record of all the evidence, it will be presumed that the judge did not err in refusing to give a requested instruction to the jury.

24. A judgment *de bonis intestatoris*, in the usual form, is sufficient.

Writ of Error to the Circuit Court for Duval County.

### STATEMENT.

This action was commenced in Duval Circuit Court in October, 1885, by the defendant in error against the plaintiff in error, who sues for the use of James and Lucetta Marcher.

The original declaration, filed November 2, 1885, sets up that the plaintiff, who sues here for the use of James and Lucetta Marcher, on January 10, 1880, in the Supreme Court of the city and county of New York, in the state of New York, by the consideration and judgment of said court, recovered against John S. Sammis, late of the county of Duval, in the State of Florida, deceased, who was the defendant in a certain action then pending in said court, $2,249.38, with $20.76 costs and disbursements, as by the record thereof remaining in the same court more fully appears, and that the same remains in full force, and that the said John S. in his lifetime, and the said administrator after the former's death, promised to pay the same, but have not done so, and refuse to. The declaration makes profert of certified copies of the letters of administration granted by the county court of Duval county to said administrator.

In addition to the stated copy of the letters of administration, there are filed a copy of the judgment, and of a transfer of the same by Wightman to James and Lucetta Marcher.

On December 7th, 1885, the defendant filed the following pleas :

1. There is not any record of the said supposed judg-. ment remaining in the said court where it is pretended to have been obtained in the manner and form as the plaintiff has alleged in his declaration.

2. The said pretended judgment was obtained by fraud against John S. Sammis, deceased, in his lifetime. The said fraud consisting of: 1st, no service on said John S. Sammis having ever been made, and he not having had his day in court; 2nd, he never having been indebted to the plaintiff in the pretended suit on which the supposed and fraudulent judgment is alleged to have been obtained; 3rd, no legal judgment ever having been entered up in the premises.

3. The court alleged to have rendered said pretended judgment had no jurisdiction of the person of John S. Sammis, as he was a citizen and resident of the State of Florida at the time the said supposed judgment is alleged to have been taken, and no personal service or any other legal service having been had on said Sammis prior to the alleged rendition of said supposed judgment.

4. The statute of limitation and non-claim of the State of Florida have run against and barred said claim set up, that is say, more than one year had elapsed since the granting of letters of administration on said estate to defendant by the probate court of Duval county, State of Florida, and before the presentation of said claims or the commencement of said suit in this court against defendant.

On the 26th of October, 1886, a demurrer to the pleas was filed as follows : 1. That the copy of a cause of action filed with a declaration is not a part thereof in the sense that it is the subject matter of a plea to the declaration. 2. The second plea seeks to set up as a defense to a judgment that the defendant is not indebted to the plaintiff the amount or what it adjudges him to be indebted. 3. The third plea presents no issue of fact, but is "argumentative and conclusive." 4. The statute of non-claim of one year is not applicable to the cause of action set up. 5. The pleas are not verified as required by law.

On the 28th day of October, 1886, and before any action had been taken as to the pleas by the plaintiff, he filed a second count to his declaration. This count, it is only necessary to say, describes the judgment as having been rendered in the Supreme Court of the state of New York, for the city and county of New York, the same day and for the same amount as is set forth in the original declaration, and states that such court had jurisdiction of the parties and the subject-matter; and it annexes as a part of the count a transcript of the record and proceedings in said court, alleged to be authenticated in due form of law. It also alleges the transfer of said judgment for a valuable consideration by Wightman, on August 9th, 1881, to James and Lucetta Marcher, by an instrument in writing signed, sealed and delivered and acknowledged in accordance with law, the original of which instrument

2

is filed as a part of the declaration. It also alleges the death of John S. Sammis, and the appointment of the administrator on the 26th day of February, 1884, making the copy of the letters of administration a part thereof.

On November 5th, 1886, the demurrer was argued, and the defendant amending his first plea by striking therefrom the words, "and no legal copy of the judgment has been filed with the plaintiff's declaration," the demurrer was as to that plea overruled, but as to the other pleas it was sustained, and the defendant was "allowed ten days to file pleas herein."

Afterwards, on the 9th day of the same month, filed his "amended pleas" as follows:

1. There is not any record of the said supposed judgment remaining in the said court wherein it is pretended to have been obtained in manner and form as said plaintiff hath alleged.

2. There was no legal service of summons on John S. Sammis in his lifetime in the alleged action wherein the said pretended judgment was rendered, and that said Sammis in his lifetime did not have his day in court in the said supposed action, and that the court rendering the said pretended judgment had no jurisdiction of the person of said Sammis in said supposed action, and when said supposed action purports to have been rendered.

3. The said James S. Wightman did not sell, assign and set over for valuable consideration to said James and

Lucetta Marcher the said pretended judgment alleged to have been obtained against John S. Sammis in his lifetime, and has never sold, assigned and set over for valuable consideration the same to said parties as alleged in the declaration.

To each of the foregoing three pleas, severally, the plaintiff filed a demurrer, on the 12th day of the same month, as being bad in substance, "in this, to wit: 1st, the other pleas are inconsistent with the first plea; 2d, said pleas present no issuable fact; 3d, said pleas present merely conclusions of law; 4th, said third plea does not deny the execution of the deed of assignment set up in the declaration." On November 13th, the next day, an order was made overruling the demurrer as to the first plea, but sustaining it as to the second and third pleas, with leave to the defendant "to amend."

On the last named day, November 13th, the defendant filed what is styled on the face thereof immediately following the style of the cause, "Amended and additional plea," and is as follows:

"2d. For a further and amended plea defendant says that said pretended judgment was obtained by fraud, in this, that John S. Sammis in his lifetime never made, signed and delivered any note for any amount to any person such as is pretended to be described and set forth by plaintiff in his declaration, and which purports to be the foundation or cause of action of said

pretended judgment. Defendant prays that said plaintiff be compelled to produce said pretended original note, which is necessary to a fair and impartial trial of said cause on its merits.''

Afterwards, on November 17th, the defendant filed pleas as follows, they purporting on their face to be filed ''by leave of the court first had:''

''3d. That copies of the complaint and summons in the case of James S. Wightman vs. John S. Sammis were not delivered to and left with said John S. Sammis, nor was service made upon the said John S. Sammis in any manner in said cause.

''4th. That said alleged judgment was attempted to be obtained against said John S. Sammis for an alleged want of answer to the summons and complaint therein alleged to have been served upon said Sammis, and said entry of judgment was procured to have been made upon an affidavit of one Frederick B. Wightman, that said summons and complaint had been served upon said Sammis, and upon a complaint verified by affidavit of one James S. Wightman, stating that said Sammis executed a note on September 13, 1872, for $1,500, payable sixty-five days after date to the order of Theodore Humbert, who endorsed the same to plaintiff in said suit; that said note was payable at the Harlem Bank in New York; was there presented, and not paid. But defendant says that said note was not produced or filed in said cause, nor any proof made of service, save the affidavit; and defendant says no such

service was ever made upon said John S. Sammis, and no such note was ever made by said Sammis; and that such judgment was procured to be entered for want of answer upon said false and fraudulent misrepresentation and without proof of any such debt as is set forth in the complaint in said suit, and the procuring to be entered of said judgment was a fraud upon the said court that entered the same upon said false affidavit, the same having been procured to be so entered upon the false and fraudulent representation aforesaid.

"5th. Defendant, for a fifth plea, says he has no assets in his possession or control of the estate of John S. Sammis, and had none at the time of the commencement of this suit, and prays whether plaintiff be permitted to recover against him as administrator of said estate in this suit."

Afterwards, on the 19th of November, the plaintiff took issue "upon said amended plea filed November 17, 1886, as a third plea," and demurred to the pleas filed on said last mentioned day, and numbered severally as 4th and 5th pleas, the grounds of demurrer to the said 4th plea being that it tenders or seeks to tender an issue of fact determinable by the court with an issue of fact determinable by the jury; and seeks to relitigate issues concluded as to said defendant's intestate by said judgment; and that the propriety of such judgment or whatever it was supported by sufficient evidence cannot be reviewed in this court. The grounds of demurrer stated to the 5th plea are, that it tenders an immaterial issue; and that it does not state there

were no assets subject to administration in the hands of the defendant. The demurrer was sustained by an order made December 18, 1886.

Afterwards, on January 11, 1887, the court denied a motion of the same date, made by the defendant asking leave to file a plea which, omitting formal parts, is as follows: Defendant "has fully administered all and singular the goods and chattels which were of the said John S. Sammis, deceased, at the time of his death, and which has ever come to the hands of the said defendant as administrator as aforesaid to be administered; and that he, the said defendant, has not, nor on the day of the commencement of this suit, at any time since, had any goods or chattels which were of the said John S. Sammis at the time of his death in the hands of the said defendant as administrator as aforesaid to be administered."

The transcript of the record before us then shows that on the day last named, at a term of the Duval Circuit Court, the cause came on for trial before a jury, giving their names; after which the record reads as follows "who being duly elected, tried and sworn the truth to speak upon the issue, and having heard the evidence, the defendant in said cause asked the court to charge the jury in words and figures as follows:

Defendant asks the court to charge the jury that unless the evidence shows that the decedent, whom defendant represents, is the person named in the judgment roll introduced in evidence as defendant therein

against whom judgment is therein alleged to be entered; plaintiff cannot recover in this cause.

JAMES M. BAKER,    [Seal.]<br>Judge."

On the left hand margin of the above paragraph are the words: "Refused. Exception taken." The record then reads as follows: "Which charge the court then and there refused to give, to which ruling the defendant excepted, and which exception was signed and sealed by the judge, and the jury having heard the charge of the court and argument of counsel, and having considered of their verdict," then follows verdict and judgment for plaintiff for $3,223.59 against the defendant, as the administrator of the estate of John S. Sammis, to be levied of the lands and tenements, goods and chattels which were of said Sammis, deceased, in his hands to be administered.

A writ of error has been taken by the defendant to this judgment.

The other facts of the case are stated in the opinion.

*C. P. & J. C. Cooper* for Plaintiff in Error.

*A. W. Cockrell & Son* for Defendant in Error.

RANEY, C. J.:

As shown by the preceding statement, this is an action instituted in the Circuit Court of Duval county in this State on a judgment recovered by James S. Wightman, suing for the use of James and Lucetta Marcher,

against John S. Sammis in the Supreme Court of the city and county of New York in the state of New York.

The assignments of error are as follows: 1st. Sustaining the demurrer to the 2d, 3d and 4th pleas filed December 7th, 1884; 2d. Sustaining the demurrer to the 2d and 3d amended pleas filed November 9th, 1886; 3d. Sustaining the demurrer to the 4th and 5th pleas filed November 17th, 1886; 4th. The refusal to permit defendant to file the plea of *plene administravit*, offered January 11th, 1887; 5th. The refusal to charge the jury as requested by defendant; and, 6th. Entering the stated judgment.

It may be safely asserted that where a final judgment has been recovered against a person in a court of one state, and an action is brought on that judgment in a court of another state, the question of the former tribunal's jurisdiction of the person sued is open to inquiry and adjudication in the latter court; but where the former tribunal has acquired jurisdiction of the person of the defendant against whom it rendered judgment, its adjudication of the merits of the controversy, assuming always that the court had jurisdiction of the subject-matter of the suit, is conclusive upon the courts of a sister state. These principles have been established with reference to the provisions of Section 1 of Article IV of the Constitution of the United States, that "full faith and credit shall be given in each state to the  *  *  judicial proceedings

of any other State;" and "Congress may by general laws prescribe the manner in which such proceedings shall be proved and the effect thereof," and those of the act of Congress thereunder, Sec. 905 R. S. U. S., ed. 1878, prescribing the mode of authenticating such proceedings, and that "judicial proceedings so authen·ticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." These principles are sustained by the following authorities: Braswell vs. Downs, 11 Fla., 62; Drake vs. Granger, 22 Fla., 348; Freeman on Judgments (4th ed.), 550-556; Black on Judgments, Secs. 856, 857, 867, 883, 889, 894-897, 898; Miles vs. Duryee, 7 Cranch, 481; Hampton vs. McConnell, 3 Wheaton, 234; McElmore vs. Cohen, 13 Peters, 312; Christmas vs. Russell, 5 Wall., 290; Board of Public · Works vs. Columbia College, 17 Wall., 251; Gilpin vs. Page, 18 Wall., 320; Thompson vs. Whitman, 18 Wall., 447; Knowles vs. Gas Light Co., 21 Wall., 453; Maxwell vs. Stewart, 22 Wall., 77; Wilson vs. Bank, 6 Leigh, 570. We are not to be understood to admit that the immunity against collateral attack which the judgment sued upon enjoys in the second jurisdiction, includes exemption from assault where, although jurisdiction of the person has been obtained, there has been fraud upon the person against whom the judgment was rendered, in the circumstances of taking the same or the entry upon trial, and for which collateral relief could have been granted in the first jurisdiction;

Rogers vs. Gwin, 21 Iowa, 59; Pearce vs. Olny, 20 Conn., 544; Dobson vs. Peace, 1 Duer, 144, S. C, 12 N. Y., 165; Freeman on Judgments, Secs. 492, 576; Black on Judgments, Secs. 373, 916; or that there may not be other cases, not involving a consideration of the merits of the controversy, in which such immunity does not exist.

It is also true, and reasonably so, that where the party sued undertakes to assail by plea the jurisdiction over him of the court of the sister state in which the judgment sued on was obtained, the plea must negative by certain and positive averment every fact upon which such jurisdiction can be legally predicated. If by any reasonable intendment the facts alleged in the plea can exist, and the court rendering the judgment sued on still have had jurisdiction, the plea is bad. Black on Judgments, Sec. 898; Freeman on Judgments (3rd ed.), Sec. 455 (4th ed.), Sec. 461; Shumway vs. Stillman, 4 Cowen, 292; Starbuck vs. Murray, 5 Wend., 148; Smith vs. Rhoades, 1 Day, 168; Moulin vs. Trenton Mutual Life & Fire Ins. Co., 24 N. J. (Law), 222; Latterett vs. Cook, 1 Iowa, 1; Struble vs. Malone, 3 Iowa, 586; Welch vs. Sykes, 3 Gilman, 197; Puckett vs. Pope, 3 Ala., 552; Barkman vs. Hopkins, 11 Ark., 157, 168; Williams vs. Renwick, 52 Ark., 160; Price vs. Ward, 25 N. J. (Law), 225; Long vs. Long, 1 Hill, 597.

The test of these principles is to be applied to the pleadings before us; but before doing so, the observations to be found in the next succeeding paragraph are necessary.

It is true that when the demurrer to the first set of pleas was put in, the second count of the declaration had not been filed. This count was filed October 28, 1886, or two days after such demurrer, but when the demurrer was heard, November 5, 1886, seven days had passed since the filing of the second count, and consequently under Section 98, page 834, McClellan's Digest, the pleas referred to stood as pleaded to the new count, and the demurrer was applicable to them in their relation to the new count. The statutory provision referred to is, that when any amendment of any pleading is allowed, the opposite party shall be bound to plead to the amended pleading within two days after the amendment, unless otherwise ordered by the court; and in case the amended pleading has been pleaded to before amendment, and is not pleaded to *de novo* within two days after amendment, or within such other time as the court may allow, the pleadings originally pleaded thereto shall stand and be considered as pleaded in answer to the amended pleadings. The new count was an amendment of the declaration, and there was no special order as to pleading to it.

Applying the test of these rules to the pleas as applicable to the first count of the declaration, we are entirely satisfied of the insufficiency of the 2nd and 3rd pleas filed December 7, 1885, and of the 2nd plea filed November 9, 1886, and of the 4th plea filed on the 17th of the same month. Though the first and second of these four pleas state that there was no service on John S. Sammis, the intestate, they fail alto-

gether to exclude the fact that he nevertheless may have appeared to the action in person or by attorney. The absence of service of summons is not inconsistent with the existence of such appearance. The same observations are also true of the third of these pleas. The assertion in the first and third, that he did not have his day in court, and in the latter, that the court had no jurisdiction of his person, are mere allegations of conclusions of law, having no other basis of fact presented by the plea than the averment of the respective pleas that there was no service of the summons. What a pleader's idea may be as to what *facts* would have given the intestate his day in court, or the court jurisdiction of his person, can not be known by the judicial mind unless he states them in his pleading. He has failed to do so or to state that the intestate did not appear to the action, which appearance would have given jurisdiction and secured a day in court. The fourth of the above pleas, in so far as it can be said to question the New York court's jurisdiction of the intestate, is also subject to the above observations as to the absence of any allegation that the intestate did not appear to the action, and is as deficient in this respect as the three other pleas.

In so far as the first of the pleas discussed in the preceding paragraph affirms that the intestate was not indebted to the plaintiff in the judgment sued on, the authorities all hold that the fact of the indebtedness is concluded by that judgment. It belongs to the merits of that controversy, and has been adjudicated,

and is not open in or to the courts of this State. As to the assertion that no legal judgment has been rendered, and the charge of fraud, it is necessary to say nothing, in addition to what has been advanced, other than that no fact evidencing either has been alleged.

This leaves nothing of these pleas, in so far as they are applicable to the first count, undisposed of except certain features of the fourth plea. That plea denies that the intestate made the note declared on, and asserts that it was not produced or filed in the New York cause. Such matters do not go to the jurisdiction, but the former of them, as is said above of one feature of the first of these pleas, is strictly part of the merits of the complaint or controversy which the intestate was summoned to answer, and the latter pertains to New York procedure, and does not fall within that class of cases to which Rogers vs. Given, and others cited with it, *supra*, belong, and in whose favor a reservation has been made by us. If the law of New York makes the filing of the note sued on in the case an essential to the validity of the judgment by default, or under such law the absence of such filing renders the judgment void there, that is a fact which is not, but should have been, set up in the plea. If the absence of such filing does not render the judgment void there, or, in other words, if, the court having jurisdiction of the person of the intestate and the subject-matter of the suit, the judgment is valid there, it is valid here. Black on Judgments, Sec. 859-861, 867-881, 889; Renard vs. Abbott, 116 U. S., 277; Ritter vs. Hoffman, 35

Kansas, 215. In the absence of an averment that such was the law of New York, the demurrer does not admit that it was the law there. The laws of our sister states are facts to be pleaded and proved like other facts. Summer vs. Mitchell, 29 Fla., 179, 10 South. Rep., 562; Tuten vs. Gazan, 18 Fla., 751; Hanley vs. Donoghue, 116 U. S., 1, 5 *et seq*. We do not take judicial notice of them; nor is the view, which has been adopted in some states, (Paine vs. S. I. Co., 11 R. I., 411; State vs. Hinaman, 27 Penn. St., 479; Rae vs. Hurlburt, 17 Ill., 572; Black on Judgments, Sec. 860) as ground for taking such notice in cases of the character now before us, that the Supreme Court of the United States takes the same notice on writs of error to a state court in those cases, correct. It does not take such notice; on the contrary, its doctrine and practice is not to take judicial notice of the law of another state, not proved in the court of the state in which the suit or the judgment was brought and made a part of the appeal record, unless the latter court takes such notice by the local law of that state. Hanley vs. Donoghue, *supra*. What we have said of the latter of the above features of the plea is also true of its statements that the judgment was entered on proof of the service of the summons and complaint made by affidavit of Frederick B. Wightman, and his affidavit ratifying the complaint as to the intestate's having made the note. In the absence of proper averments setting up the illegality of the New York judgment under the law of that state for the causes mentioned

in the plea, if not for other reasons, the assertion of a fraud must be regarded as the allegation of a mere conclusion of law.

There is but one aspect in which it can be said that the preceding views would not be applicable to the preceding pleas when considered in their relation to the *second count* of the declaration.  Whereas, the copy of the New York judgment filed November 2d, 1885, with the first count, is not a part of that count, the second count makes the transcript of the New York proceedings filed with it October 28th, 1886, a part of the latter count, by the use of apt words, as follows: "which is herewith filed as a part hereof, marked exhibit A."   The act of 1828, McClellan's Digest, Sec. 30, p. 817, and R. S., Sec. 1057, provides that all bonds, notes, bills of exchange, covenants and accounts, upon which suit may be brought, or a copy thereof, shall be filed with the declaration, and in Hooker vs. Gallagher, 6 Fla., 351, it was properly held that a copy of a note which was filed with the declaration without any words purporting to make it a part of the pleading, was not a part thereof, and was not reached by demurrer.  Without laying any stress upon the fact that this cause of action is not among those designated by the statute, we are unable to see that the quoted words of the declaration have not made it a material part of the second count to be considered in judging the pleas, and viewing them as having done so, we think its effect is to limit the scope of the allegation that the New York court "had jurisdiction of the parties" to an assertion that jurisdiction was obtained

by the means shown by such transcript, which was "by delivering and leaving with the defendant, John S. Sammis, personally, true copies" of the summons and complaint, on October 17th, 1879, at the locality stated in the city of New York. Giving it this effect it could not be said that pleas which properly denied such service would not be sufficient; yet, should we admit that any of the above pleas are, under the view just advanced, so far in accord with the established rules of pleading as to make them good against a demurrer, it would be of no benefit to the appellant, since we find that the first of the pleas filed November 17th, 1886, and numbered "3rd," is to the effect that copies of the complaint and summons were not delivered to and left with the intestate, John S. Sammis; which plea the plaintiff took issue on, and this issue standing on trial in Duval Circuit Court, the defendant, or appellant here, had an opportunity to prove that there was no such service as was shown by the transcript; and such issue rendered immaterial, in so far as the second count is concerned, any error there might have been in sustaining the demurrer to the pleas discussed above; and in view of the absence of any bill of exceptions, it is conclusively presumed that the proof sustained the verdict rendered for the plaintiff. Walter vs. Florida Savings Bank, 20 Fla., 826.

II. The fourth of the pleas filed December 7th, 1885, is in effect that the statute of limitations and non-claim have run against and barred the claim set up; that is to say, more than one year had elapsed since the

granting of letters of administration on the estate of the defendant, in the Probate Court of Duval county in this State, and before the presentation of said claims or the commencement of this action.

As a defense under or plea of the statute of non-claim, this pleading is obviously insufficient, since it fails to allege a publication of the notice required by that act, McClellan's Digest, p. 84, sec. 30 (Fillyau vs. Laverty, 3 Fla., 72; Ellison vs. Allen, 8 Fla., 206), and such defect renders unnecessary any discussion of the question whether one year or two years is allowed by that act for the *presentation* of claims.

This, however, does not dispose of the plea, for if it be true that the action was barred, under the general statute of limitations of February 27, 1872, pp. 731-734, McClellan's Digest, by the lapse, without suit, of one year from the grant of administration, the plea clearly presents this defense and should have been sustained. Section ten of this act prescribes twenty years as the period within which any action on any judgment of any court of any state within the United States, must be instituted, that section and others fixing the different limitations which govern other classes of causes of action. The fifteenth section is as follows: "If a person entitled to bring an action die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his representatives after the expiration of that time, and within six months from

the issuing of letters testamentary or of administration. · If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his executors or administrators after the expiration of that time and within one year after the issuing of letters testamentary or of administration." The question arising upon this *section* is, does it create an independent, or distinct and substantive limitation upon any and all causes of action which may exist against a testator or intestate at his death, and require that action shall be brought thereon against the administrator or executor within one year from the issue of letters testamentary or of administration; and if it does not, what is its effect? If it does, the limitation of one year applies to any and every cause of action, whatever its nature, and whether it be one for which the longest period, twenty years, or the shortest time, two years, has been prescribed by the previous sections of the law, and the executor or administrator can be sued on any cause of action, upon which the statute was running but which was not barred at the death of the testator or intestate, within one year after the issue of letters, but he can never be sued on any of them after this period of one year has elapsed. Moreover, if this be true of the second sentence of the section, then the same interpretation or construction must be given to the first sentence, which governs the bringing of

actions by executors and administrators, and the result which follows is that no cause or right of action of which their testators or intestates died seized or possessed, and upon which the statute had begun to run, can be sued on after six months from issue of the letters testamentary or administration.

We do not think this is the purpose or effect of this section; on the contrary, our judgment is, that its purpose was simply to secure the period of six months, and that of one year, according as the case may be, wherever the cause of action is alive at the death of the testator or intestate, and the statute is then running on it, and the period on limitation, applicable to it under other sections of the law, has expired before the issue of the letters, or will expire within less than the period of six months after such issue, when the right of action is in the decedent, or within less than the period of one year, when the right of action is against the deceased. The sole purpose and effect of the section is to provide for cases in which the right of action existed in or against the deceased at his death, and the statutory period controlling resort to the courts for its enforcement, was then running, and might expire either before the grant of administration, or after such grant, and within less than six months, or one year, (according to the class of the case) therefrom. The words "time limited for the commencement thereof," mean and refer to the time prescribed elsewhere in the statute for bringing the action which may at any time be under consideration,

and the words "after the expiration of that time," not only refer to the stated time, but show that the purpose of the section was to provide only for cases in which an action by or against a personal representative is brought *after* the period of limitation prescribed for it, counting from the time of its accrual against, or in favor of, as the case may be, the decedent, has expired or run.

We are aware that a different view has been expressed in this court in the case of Sanderson's Admrs. vs. Sanderson, 17 Fla., 820, 850. There it is said: "When the statute has not run in the lifetime of the intestate and the cause of action survives *then it ceases to run after his death* until an administrator is appointed; and upon his appointment, the action under the statute must be brought 'within one year after the issuing of letters of administration.' The terms 'after the expiration of that time,' in this section are limited by the terms 'within one year after issuing letters of administration.' The terms 'after the expiration of that time,' in this section are there to make it clear that even if a greater length of time than the general limitation has expired after the death of the intestate and before letters of administration are issued, yet in cases where the limitation has not operated in the lifetime of the intestate, the time between the death and the issue of letters shall not be estimated." We do not think the general limitations of the statute cease to run on the death of the testator or intestate; on the contrary, they continue to run, and if

more of any such periods than six months, ir cases covered by the first sentence, or than a year, in the other class of cases, remains unexpired at the time of the grant of administration, the general limitations control, and nothing in the section under discussion has any application or effect. The terms, "within one year after issuing letters of administrati on," are a limitation upon the words "after the expiration of that time," in that not more than one year after the issue of letters is allowed for bringing an action where the period of limitation prescribed for the action by the other or general provisions of the statute has expired before the grant of letters, or expires within less than one year after such grant; but the one year provision never has any application or effect except where the general limitation controlling any particular action was running at the death of the testator or intestate and has expired before the grant of letters or within less than one year after such grant. Where the general limitation which was running at such death does not expire within one year after such grant, the action against the administrator may be brought within whatever part of the period prescribed by the general limitation may remain unexpired at the time of such grant; and a similar principle is applicable to actions by executors or administrators where the general limitation which was running at the death of the testator or intestate has not expired before the grant or within six months after the grant of letters. The New York judgment having been rendered January

10, 1880, and the action thereon in Florida having been commenced against the administrator, Sammis, in February, 1884, there still remained nearly sixteen years of the general limitation of twenty years, governing actions on such judgments, and consequently the limitation of one year prescribed by the fifteenth section of the act does not govern the suit now before us; and no publication under the statute of non-claim being shown by the plea, that statute, or the effect of a non-presentation under it, can not be considered.

The views referred to as announced by Judge Westcott in the case just cited, though concurred in as an abstract proposition by the other justices then constituting the court, were held by them not to be applicable and were consequently not enforced, in that cause. Hence they have not the force of adjudicated law. To the extent and for the reasons indicated above, we are unable to agree with his conclusions, and we find ourselves supported by a similar conclusion reached in other states where the same statutory provision obtains.  In California, where the corresponding section is identical with ours, it was said: That section only applies to cases where the statute has commenced to run; and that this construction is evident as well from reason as from the language of the section; and that the object was not to curtail, but to prolong the period for suing in the given category.  Smith vs. Hall, 19 Cal., 85; Wood's Cal. Dig., Sec. 24, p. 48.  In Nevada, where six months was the general limitation, and three months of it had run when the debtor died, and about

a month after there was administration on his estate, and seven months later suit was brought, it was said, in Wick vs. O'Neale, 2 Nev., 303, of exactly the same provision (1 Comp. Laws, Sec. 1038), that it beyond all doubt extended the time for the commencement of actions to one year from the time of issuing the letters testamentary in all cases where the person against whom the action may be brought dies before the statute has fully run; and in Richards vs. Hutchinson, 18 Nev., 215, the decision was that the object of the section was to extend the time in certain cases within which actions may be commenced, and that it was not intended to limit the time given by other sections of that act. And in New York, where the same statutory law existed (Sec. 102 Voorhees' An. Code), and an action was begun against the administrator after one year from the issue of his letters, but before the expiration of the general limitation applicable to causes of action, six years, it was held that there was no bar, and that it was not intended that the one year provision should act as a limitation of the other period, but as an enlargement. Scovill vs. Scovill, 45 Barb., 517. See also Harris v. Rice, 66 Ind., 267.

The result of our conclusions, with which, we may remark, the decision in Sanderson's Admrs. vs. Thomas and Livingston, 17 Fla., 468, does not conflict, is that the plea considered as one presenting the period of one year from the grant of letters as a bar is insufficient in law, and the demurrer was properly sustained.

III. The first of the pleas filed December 7, 1885, and November 9, 1886, do not present new matter, but are pleas of *nul tiel record*, and the absence of a *similiter* is no ground for setting aside the trial or arresting judgment. Huling vs. Florida Savings Bank, 20 Fla., 695; Burk vs. Clark, 8 Fla., 9.

IV. The third of the pleas filed November 9, 1886, alleged that Wightman, the plaintiff in the New York judgment, did not sell, assign or set over the judgment for a valuable consideration to James and Lucetta Marcher, and has never done so. It was demurred to and the demurrer was sustained. The second count of the declaration alleges such an assignment of the judgment. The argument advanced in support of the plea, and against the ruling sustaining the demurrer thereto, is, that the real party in interest must bring the suit, and for his own use, and can not bring it for parties not interested.

Under the common law system of jurisprudence, choses in action are not assignable at law; or, in other words, the courts of law do not recognize any transfer or assignment of them, though courts of equity do, and hence the assignee can not, at least in the absence of a new promise to him by the obligor, maintain an action at law on them in his own name, but must sue in the name of the assignor, the obligee in the contract, for the use of such assignee. Barbour on Parties, 42, 44; Hooker vs. Gallagher, 6 Fla., 351; Kendig vs. Giles, 9 Fla., 278; 1 Parsons on Contracts (7th ed.), 223. Statutes, prior to 1881, modified the law rule as

to certain instruments, but those statutes, whether English or our own, need not be noticed as they did not include judgments. In 1881 the Legislature enacted that any and all civil actions at law "may be" commenced, maintained and continued in the name of the real party in interest, but that nothing in the act should be deemed to authorize the assignment of a thing in action not arising out of contract. Chapter 3241, Laws of 1881. See also Section 981, R. S.; Robinson vs. Nix, 22 Fla., 321. In our judgment this statute has not abolished or precluded the use of the common law practice, but merely permits the assignee to sue in his own name, if he sees fit to do so. Its language is simply permissive, whereas that of the New York Code of Procedure, Sec. 111, Wait, p. 111, Voorhies, p. 89, is that every action *must be* prosecuted in the name of the real party in interest. We fail to perceive that the action is brought for parties not interested. The plea does not go to the extent of denying that Wightman sold, assigned or set over the judgment to James and Lucetta Marcher, but merely alleges that he did not do so for a valuable consideration. There is nothing in the plea that makes it of the least materiality to defendant whether the assignment was merely voluntary, or for a good or a valuable consideration. No consideration was essential to the transfer as between Wightman and his alleged assignees. Ensign vs. Kellogg, 4 Pick., 1. A voluntary assignee can sue in the name of the assignor. There is in Hooker vs. Gallagher, 6 Fla., 351, and Sinclair vs.

Gray, 9 Fla., 71, nothing that conflicts with these conclusions. The demurrer was properly sustained.

V. Even if we treat the "5th" of the pleas filed November 9th, 1886, as a plea of *plene administravit*, instead of a statement that the administrator has no assets, without showing good reasons for not having any, it is bad. The plea of *plene administravit* is not admissible in this State in an action whose purpose is merely to put the claim in judgment. Barnes vs. Scott, 29 Fla., 285, 11 South. Rep. 48; State vs. Crawford, 23 Fla., 289, 2 South. Rep., 371. The last remark is a sufficient disposition of the alleged error of the judge in refusing to permit the filing of a plea of *plene administravit* which was presented by the defendant on January 11th, 1887. It is certainly not error to refuse at any time a plea which is never admissible in the action.

VI. The failure upon the part of the plaintiff to take any notice of the plea filed November 13th, and numbered 2d, is of no consequence. Its purpose was to present an issue as to Sammis, the intestate, having made the note sued on in New York, and hence, for reasons indicated in the first subdivision of this opinion, the plea was without merit; and, besides this, its subject-matter was covered by other pleas. Appellant has sustained no harm from its having been overlooked by the plaintiff, if not also by himself. Gregory vs. McNealy, 12 Fla., 588; Walter vs. Florida Savings Bank, 20 Fla., 826.

VII. Another alleged error is as to a refusal of the Circuit Judge to charge the jury. The charge reads: "Defendant asks the court to charge the jury that unless the evidence shows that the decedent whom the defendant represents in this suit is the person named in the judgment roll introduced in evidence as defendant therein against whom judgment is therein alleged to be entered, plaintiff can not recover in this cause." The charge is signed and sealed at the foot of it by the judge, and is endorsed on the margin: "Refused; exception taken." "Which charge," says the record, "the court then and there refused to give, to which ruling the defendant excepted, which exception was signed and sealed by the judge. And the jury having heard the charge of the court and argument of counsel, and having considered of their verdict, on their oaths do say." Then follow the verdict and judgment. As we understand the transcript, all the above matter appears upon the formal extended record of the term of the court. Under the rule which requires that an appellate court shall presume in favor, and not against, the correctness of the action of a trial court, and shall not reverse a judgment except for error which is affirmatively shown by the record, and of the uniform enforcement of this rule in declining to consider the refusal of a trial judge to give to the jury the proffered instruction, where there is an entire absence from the appellate record of the testimony adduced on the trial, we are precluded from granting any relief to plaintiff in error on this point. Horn vs.

Gartman, 1 Fla., 63; Proctor vs. Hart, 5 Fla., 465; Burk vs. Clark, 8, *Ibid*, 9; McKay vs. Friebele, *Ibid*, 21; Miller & Criglar vs. Kingsbury, *Ibid*, 357; Frisbee vs. Timanus, 12 Fla., 537; Blige vs. State, 20 Fla., 742; Livingston vs. Cooper, 22 Fla., 292; Myrick vs. Merritt, *Ibid*, 335. But one exception to this rule has been recognized by this court, and that is when an instruction has been given which is clearly irrelevant and calculated to mislead the jury. J., T. & K. W. Ry. Co. vs. Neff, 28 Fla., 373, 9 South. Rep., 653; Fash vs. Clark & Ferris, 8 Fla., 16. In case of the refusal of the judge to rule at all, as in Keitt vs. Spencer, 19 Fla., 748, stands on a different principle. The action of the judge in refusing the charge must, in the absence of a bill of exceptions showing the facts as they really occurred, be assumed to have been predicated on facts which rendered his action proper. Moreover, the record shows that the judge did in fact charge the jury, as is affirmed by the text of the opinion in Duggan vs. State, 9 Fla., 516, in which it was held that different language did not show that they were charged on the law of the case; and though the charge may have been oral, we do not wish to be understood as admitting that it is not to be presumed that that charge covered the refused instruction. Southern Express Co. vs. Van Meter, 17 Fla., 783. In disposing of the point as we have, it is not our purpose to decide that there has been a compliance with the doctrine of Myrick vs. Merritt, 22 Fla., 335, as to special bills of exceptions

(see also Southern Express Co. vs. Van Meter, 17 Fla., 783, and Potsdamer vs. State, *Ibid*, 893), or that the exception to the charge is otherwise properly authenticated, but we leave this question open.

VIII. The last error assigned is, that the court erred in entering the judgment in this cause, the same not corresponding with the pleadings, or being authorized thereby. The action is against the administrator on a cause of action which accrued against the intestate, and the judgment is in the usual form of a judgment *de bonis testatoris*. In so far as there were issues of fact, the requisite proof of all material facts, including that of New York law, is conclusively presumed to have been made. Dorman vs. Bigelow, 1 Fla., 281. These observations, with what has been said before, cover the entire case.

The judgment is affirmed.