326       SUPREME COURT,

Jordan vs. Petty et al.—Statement of Case.

---

THOMAS JORDAN, APPELLANT, vs. HENRY C. PETTY, ROBERT A. WARE, ET AL., APPELLEES.

1. Where a judgment upon a verdict was defectively entered, and the Court afterwards, on motion, ordered a new judgment to be entered *nunc pro tunc*, such latter entry, as between the parties to the record, relates back to the date of the first entry, and is to be regarded and treated to all intents as entered at that time; and it will rectify and cure any variance between the original entry of the judgment and the execution issued thereon.

2. When a *fieri facias*, or other execution, is taken out on a judgment, within the time limited by law, and which is not executed, the plaintiff may sue out a new writ of execution at any time afterwards without a *scire facias;* provided the first writ be returned and filed.

On appeal from an order quashing an execution issued in favor of the Appellant against the respondents, and which had been levied on the goods of respondent, Robert A. Ware. The facts are set forth in the opinion of the Court, to which reference is made.

*Davis* for Appellant.

*Hawkins* for Appellee.

THOMPSON, J.:

The facts of this case appear to be as follows :

In 1840, a suit was instituted by attachment in the Superior Court of the Apalachicola District of the Territory of Florida, for ·Franklin County, in favor of Thomas Jordan, against Henry C. Petty, Augustus P. Clayton, William Bilbro, John Bilbro, and the respondent, Robert A. Ware, as the owners of the steamer Alabama, upon a demand for services; which attachment was levied upon the steamboat in April, 1841. The record states that the defendants appeared by Semmes, Campbell and Stone, their attornies, and pleaded the general issue, and a trial, verdict and judgment were had, but the latter did not specify the names of the defendants, simply stating "Henry C. Petty, &c." On the 3d May, 1841, a *fieri facias* issued on this judgment against all the defendants named in the writ and declaration, under which a part of the sum recovered was levied, by a sale of the property attached, and was returned *nulla bona* as to the residue.

No further action appears to have been had until 1849, when an *alias* writ of *fieri facias* was sued out of the

Clerk's office of the Circuit Court for the Western Circuit, sitting in Franklin County, likewise against all the defendants named in the declaration, which writ being levied on the goods of R. A. Ware, was, at the April term, 1849, of the said Circuit Court, quashed on his motion, because of the defect in the judgment entered in April, 1841, only one of the defendants being named therein. At the same April term, 1849, and after the order was entered quashing the execution, the plaintiff, Jordan, moved the Court for leave to enter up judgment on the verdict rendered in the cause at the April term, 1841, of the Superior Court, " a sufficient judgment having been omitted to have been entered at the time ;" upon which motion, after argument of counsel for both parties, as the record states, it was ordered that said motion be granted, and that judgment should be then entered up as of the April term, 1841, which was done accordingly.

On the 23d of February, 1850, the plaintiff sued out another writ of *fieri facias* on the judgment entered up *nunc pro tunc*, at the April term, 1849, which was levied on the 9th of February, 1852, upon the goods of the defendant, Ware. On the 10th of February, on a suggestion of illegality or irregularity in the issue of the execution, the same was, by order of the Judge of the Western Circuit, superseded until the ensuing term of the Court, and the goods levied upon surrendered to the defendant, Ware, on stipulation, with security, to abide the judgment of the Court. And at the April term, 1853, the affidavit of illegality was sustained on the ground of irregularity, the execution having issued without a previous *scire facias*, sued out, and *fiat* thereon, and the writ was quashed.

The error assigned here is on the order last mentioned of April term, 1853, and the case rests upon the effect to be

given to the entry of judgment, *nunc pro tunc,* at the April term, 1849.

The error in entering the judgment of the Court at April term, 1841, it is contended, is a misprison of the Clerk of the Court, and our practice may, possibly, be so considered, although the plaintiff, or his attorney, is not entirely blameless, it being his duty to attend to the entries made by the Clerk in his case at the time of making the entry, and if he is not satisfied with it, should bring the matter to the attention of the Court. But this is a matter properly for the consideration of the Court on a motion to enter judgment *nunc pro tunc.* Here it has been entered, and the propriety of the order directing it, is not before us for review.

The granting of such leave is, in all cases, a matter resting in the sound discretion of the Court. Mr. Tidd, speaking of such applications to enter judgment *nunc pro tunc,* against executors and administrators, says that in granting this indulgence, the Courts will take care that it shall not operate to the prejudice of the defendant, by imposing terms upon the plaintiff, as that he shall undertake not to disturb intermediate payments made by the defendant, or impeach judgments obtained in the interval. 2 Tidd Pr., 933, citing 6 Term Rep. 11, and Lloyd vs. Howell, Admr., H. 37, Geo. III, R. B., 4 Taunt. R., 702. 1 Young & Jer. R. 368. And he also says, that if the defendant dies in vacation, judgment may be entered after his death, as of the preceding term, when he was living, and it will be a good judgment at common law, as of that term. 2 Tidd Pr., 939. There can be no doubt but that the effect of the judgment entry actually made at the April term, 1849, *nunc pro tunc,* is to make the judgment relate back to the April term, 1841, and is to be regarded as a judgment of that term. If this were not so, and the time of the actual

41

entry could be enquired into, the caution which, Mr. Tidd says, the Courts always observe, would be a mere idle ceremony, wholly useless and unnecessary. So also the entry of judgment against one who dies in vacation, as of a preceding term when he was alive, would be of little avail to the plaintiff, if the date of actual entry could be enquired into upon a writ of error, *coram vobis.* The judgment must be regarded, certainly for all purposes of the present case, as of the term of April, 1841. It is now contended that, considering this as the date of the judgment, no legal, regular or valid execution issued thereon within three years after the rendition of the judgment; that the plaintiff should have sued out a *scire facias quare executionem non,* to obtain his writ of *fieri facias ;* and having sued out the writ on the 23d of February, 1850, without such revival, it was irregular and properly quashed.

At common law if, in a personal action, the plaintiff suffered his judgment to lie for a year and a day without suing out an execution, he could not do so afterwards, but was put to his action of debt upon the judgment. This inconvenience was remedied by the Statute Westm. 2, (13 Ed. I,) c. 45, which gave the plaintiff a *scire facias* in such case, to revive the judgment, and obtain execution thereon.

Our statute has extended this time to three years. The general rule here, therefore, is that if the plaintiff does not sue out his execution within the time of three years after the rendition of his judgment, he must, in order to obtain the fruits thereof, adopt either his common law remedy, of an action upon the judgment, or a *scire facias* under the statute.

This general rule, however, is to be understood with some exceptions, among which is this : When a *fieri facias* or other writ of execution is taken out, within the time limited, and not executed, a new writ of execution may be

sued out at any time afterwards, without a *scire facias*, provided the first writ be returned and filed. 2 Tidd Pr., 1104, citing 2 Wils. R., 82; Barnes Notes 213, S. C. Is not this case within the exception? An execution was sued out on the 3d day of May, 1841, within the regular time after judgment, which has not been executed, and which has been returned and filed in the office. It is said the writ is irregular, because it is upon a judgment against several persons jointly, and the judgment of 1841, when it was issued, was against Henry C. Petty only. But the answer to this is obvious. The judgment entered in 1849 corrected the error, and as it was entered *nunc pro tunc*, it related back, and by intendment of law, is a judgment of 1841, and the execution issued on the 3d of May, 1841, is in comformity with it in all respects, as it now stands upon the roll. The whole error has been in not taking a correct view of the order of April, 1849, correcting the entry of the judgment. As between the parties to the record, it must be regarded consistently, either as of the date 1841 or 1849. It cannot partake of both dates. If of the date of April, 1841, then the case comes within the exception before laid down, and the writ issued in 1850 was a regular and valid execution. If of the date 1849, then the writ was issued within the limitation fixed by our statute of three years, and is, of course regular; so that *qua cunque via data*, it is a good and valid writ, and should have been supported.

It was urged upon the argument, by the counsel for respondent that the judgment entered in this case was voidable for error in fact; that the attorneys who appeared and pleaded for the defendants therein, were not authorized by the defendant, Ware, to make such appearance and file such plea, and that all Courts may collaterally pass upon the question whether this position be correct or not, as applicable to Courts of original jurisdiction. We are perfect-

ly clear that this Court, as one of appellate jurisdiction, cannot thus pass upon the question. If the point was made and adjudicated in this case in the Court below, which does not, however, appear, the decision must have been against the respondent, as the order of April term, 1853, which is the order appealed from, only avoids the execution, and the omission by the respondent to enter an appeal, would amount to a waiver and acquiescence. But the point does not appear to have been adjudicated in the Court below. We can take notice in this Court of an error of law appearing on the face of the record, but we cannot do so of an error of fact, unless it is a matter on which an appeal or writ of error is based, and regularly assigned for error in this Court. If there is such error of fact existing in the case, it must be brought to the notice of the Circuit Court, by writ of error *coram vobis*, or other appropriate remedy.

For the foregoing reasons, we are of opinion that there is error in the order of the Court of April, 1853, which is appealed from, and the same should be reversed and set aside, with costs.

*Per totam curiam.*    Order reversed and set aside.