J. M. Coe, Administrator *de bonis non* of the Estate
of W. E. Coe, Deceased, Appellant, vs. James
A. Finlayson, Administrator of Daniel Bur-
nett, Deceased, Appellee.

1. A mortgage on real estate, under the laws of this State, is a
   mere lien on the land to secure the payment of money, and
   the mortgagee can maintain no action thereunder for posses-
   sion until he becomes the owner at foreclosure sale.

2. Seven years' adverse possession of land based upon a paper
   title, not good as an independent conveyance, but sufficient to
   constitute a basis of an adverse holding, is not the period of
   limitation prescribed by the statute to defeat a mortgage claim,
   but twenty years is the prescribed period, and applies whether
   the adverse holder claims under title from the mortgagor or
   under an independent source of title.

3. A decree in foreclosure proceedings, ascertaining the amount
   that the mortgage was intended to secure, and declaring a lien
   on the land mortgaged to secure same, is not a money decree
   within the meaning of the statute prescribing a limitation of
   twenty years for actions founded on judgments or decrees, and
   such a decree does not terminate the foreclosure suit or give
   the complainant any rights to possession of the land until he
   obtains a deed at foreclosure sale that will be hostile to the
   defendant in foreclosure.

4. As a general rule, a suit may be revived at any time before the
   cause of action is barred by the statute of limitations applicable
   to it, and in case of the abatement of the suit by the death of
   a plaintiff, the statute will not run until administration on his
   estate has been taken out, or in the absence of a person who
   is capable of suing.

5. C. commenced suit to foreclose a mortgage on real estate
   against H. and G., mortgagors, and obtained a decree of fore-
   closure in December, 1869; C. died April 7th, 1871, before any
   proceedings were had under the decree and no administration
   was had on his estate or further proceedings taken in the suit
   until the 2nd of April, 1891, when there was a revivor in the
   name of an administrator of C., and proceedings commenced to
   execute the decree; B. took adverse possession of the mort-

gaged lands in 1879, and was holding adversely when the suit
was revived, as to which proceeding he was not made a party;
*Held,* that there was no statute of limitations in operation when
C. died in April, 1871, and none had then begun to run; that
the statute of limitations of 1872 did not begin to run until
after the appointment of C.'s administrator in 1891, and that
B. had acquired no title by adverse possession against the
mortgage claim.

Appeal from the Circuit Court for Jackson county.

### Statement.

A bill was filed in this case in July, 1891, by Daniel
Burnett who died intestate after a decree in his favor
and after an appeal to this court, but before the sub-
mission of the case here. The appellee, voluntarily came
in and was made a party and publication was made as
to the heirs of Burnett. The bill alleges, substantially,
that Daniel Burnett was owner and in possession of the
N. W. 1-4 and S. W. 1-4 of section 16, township 3 N.,
R. 7 W., situated in Jackson county; that he held said
lands by paper title as follows: A deed from Robert J.
Pittman, sheriff of Jackson county, of date February
3rd, 1879, to W. J. Griffin; that this deed was made to
Griffin by mistake. Pittman duly advertised the lands
for sale and sold them at public sale, and Burnett sent
the money by Griffin to buy the lands, but by mistake
of Griffin or Pittman the deed was made to Griffin in-
stead of Burnett; that Griffin held said paper for some
time as agent of Burnett, when it was transferred to him
by the endorsement on the back which both parties re-
garded at the time as sufficient transfer, and that Griffin
never claimed any interest in or title to said lands by
virtue of said deed, but held and claimed that the same
vested in Burnett a title to the lands. The original deed

from Pittman to Griffin was attached as an exhibit to the bill and made a part thereof.   It is as follows:

State of Florida, Jackson County.

Know all men by these presents, that the county of Jackson, in the State of Florida, for and in consideration of the sum of twenty cents to the sheriff of said county by W. J. Griffin, the receipt whereof is hereby acknowledged, do give, grant, bargain, sell and convey unto said W. J. Griffin, his heirs and assigns, the following described property: the S. W. 1-4 of section 16, township 3, range 7, north and west, together with all the improvements,. hereditaments and appurtenances thereto belonging.   To have and to hold the same unto the said W. J. Griffin, his heirs and assigns, in as full and perfect a manner as the county of Jackson has to said lands.

In testimony whereof I, Robert J. Pittman, sheriff in and for said county by virtue of an order passed by the County Commissioners of said county, on the sixth day of January, 1879, do hereunto affix my hand and seal on this 3rd day of February, A. D. 1879.

(Signed.)          ROBERT J. PITTMAN, (Seal.)

Sheriff Jackson County.

Signed, sealed and delivered in presence of John Connely, Frank Phillips.

Endorsed. Sheriff deed W. J. Griffin.   Transferred to D. Burnt.   Paid.

The bill further alleges that Burnett was of limited education and knew nothing of the law or forms regulating the conveyances of real estate, and afterwards, being informed that Griffin had not made him a sufficient title to said land, he obtained from him, as a deed of conveyance of said lands the following written instrument, exhibited with and made part of the bill, *viz*:

State of Florida, County of 4-30-84.

Know all men by these presents, that we the undersigned have sold and given unto the possession of Daniel Burnett all our claim in and right to the following described land and all improvements thereon. Description of land, *viz*: W. 1-2 of section 16, township 3 north, range 7 west. Signed by W. J. Griffin, E. Griffin. Witnessed by Mary A. Sansom, B. T. Sansom.

It is further alleged that immediately upon the execution of the deed by Pittman to Griffin, Burnett went into possession of the lands under claim exclusive of all other rights, founding same upon such written instruments as being conveyances of the lands and that he had ever since entering into possession been in continued use and occupation, and held open, notorious, exclusive and adverse possession of the lands under a claim of title and ownership thereof in fee and was in such possession at the time of filing the bill; that after the execution of the paper from Griffin to Burnett on April 30th, 1884, he, being in possession under the former deed from Pittman to Griffin, continued to hold and maintain possession of said lands in the same manner as alleged under the said sheriff's deed founding his title upon said deed as being a conveyance of said lands.

It is also further alleged that Burnett had his home for himself and family upon said lands and had lived upon the same as his home for more than eleven years, and that the same had been usually cultivated and improved, and a large portion of same had been protected during all of said time by substantial fences and enclosures; that all of said lands had for the ten years past constituted two known single farms, one held and cultivated by Burnett personally, and one by one Sansom as his tenant, and had been partly improved by the clearance of land, erection of cabins, fences and otherwise,

J. M. Coe v. James A. Finlayson.—Statement of Case.

and that a portion of said farm had been left not cleared and not enclosed, according to the usual course and custom of the country adjoining, to be used for the purpose of fencing, timber, firewood and otherwise; that the use, occupation, possession and adverse holding by Burnett as alleged had been adverse to the claim of E. P. Hudson and F. W. Gilbreth hereinafter mentioned as well as all other persons claiming said lands.

It is further alleged that Mary E. Coe, administratrix of W. E. Coe, deceased, obtained a decree of foreclosure on the 20th of December, 1869, in the Circuit Court of Jackson county against Hudson and Gilbreth upon a large lot of land including that already described; that said decree was allowed to become dormant, stale and antiquated until about April 2nd, 1891, when the defendant as administrator *de bonis non* of W. E. Coe, deceased, began proceedings to revive same for the purpose of selling said lands under said foreclosure decree, and obtained an order empowering Frank Philips, one of the masters in chancery of the court, to sell said lands including those of Burnett; that Philips was proceeding to execute said order and had advertised said lands for sale on the 6th of July, 1891.

It is stated in the bill that Burnett admitted that Hudson and Gilbreth, at the time of the said foreclosure decree, had some title and interest in said lands, but it is alleged that said title and interest had long since ceased and title had vested in complainant as alleged, and that if defendant was permitted to sell said lands it would cast a cloud upon Burnett's title and greatly injure him.

Defendant was required to answer under oath all the allegations of the bill, and it was prayed that he be enjoined from selling or in any manner interfering with Burnett's lands by virtue of said foreclosure decree.

A temporary injunction was granted, and defendant answered substantially as follows: It was true that complainant Burnett claimed title to the lands described in the bill in the manner and from the sources therein alleged, but it was averred that neither Burnett nor W. J. Griffin, through whom he claims, ever had any legal right or title to said lands; that at the time of the foreclosure decree of December 20th, 1869, in the case of Mary E. Coe, administratrix, against Hudson and Gilbreth they had a complete legal title to and were legally seized and possessed of said lands described in the mortgage in the foreclosure suit, and which included the lands involved in this suit, and the same had never been conveyed by them or their descendants, nor by any order of this court; that the only title upon which Burnett's deeds and possession are predicated are pretended tax deeds, made and executed in pursuance of sales of said lands for the non-payment of taxes assessed thereon, which said sales are irregular, illegal and void in law and equity and conveyed no title whatever to the purchasers thereunder; that the illegality consisted in this, that the deed by Pittman, sheriff, to Griffin was made in pursuance of a sale of said lands by order of the Board of County Commissioners of Jackson county, as recited in said deed, which order was promulgated in pursuance of Chapter 2084, acts of 1877, the said lands then being held by the county of Jackson under a pretended title acquired at a sale thereof by the collector of revenue for said county on June 3rd, 1872, for the non-payment of taxes assessed thereon for the years 1870 and 1871, and which said sale to the county was illegal and void in the following respects: that the N. W. 1-4 of section 16, township 3, range 7, N. and W., was assessed in the year 1871 for that year only, and in parcels of forty acres each, to unknown; and in 1870 it was assessed in parcels

of forty acres, but for that year and the years 1869, 1868 and 1867, extending and calculating the taxes on each forty for each year respectively, while the certificate of sale and the deed made in pursuance thereof to the county aforesaid, both recite the sale of the whole of the N. W. 1-4 in its entirety for the non-payment of the taxes assessed thereon for the years 1870 and 1871, but for a sum equal to the amount due for all of said years; that said sale so made and all subsequent proceedings thereon, respondent is advised and believes, and so avers, is illegal and void, and passed no title to the county of Jackson, and that the sale thereof by the sheriff conveyed no title whatever to Griffin or Burnett; that the S. W. 1-4 of said section was assessed in a similar manner, sold on the same date and for the same years, and in all other respects said assessment sale and the certificate and deed made in pursuance thereof were the same as set forth in regard to the assessment and sale of the N. W. 1-4 (substituting the descriptions of the property); wherefore respondent submits that said sale was illegal and void, and conveyed no title to said county, and the sale by said sheriff to Griffin conveyed no title to him or to complainant, Burnett.

The answer further avers that by the terms of the decree of foreclosure of December 20th, 1869, the defendants therein, Hudson and Gilbreth, should, upon default in paying the sums of money therein decreed within the time therein specified, stand thenceforth absolutely debarred and foreclosed of and from all right and equity of redemption of, in and to said lands, and the same should be sold at public outcry by one J. Q. Dickenson, a master of the court, and the proceeds applied to the payment of said mortgage debt; that Hudson and Gilbreth failed to pay said amounts as directed but no sale was immediately made, and on the ——-

day of April, 1871, Dickenson died, without making the
sale, and on the 7th day of same month and year Mary
E. Coe departed this life, and no further action was
taken in said cause until the order of this court of April
2nd, 1891, empowering Frank Philips to succeed to the
duties of said Dickenson, and to carry out the terms of
said foreclosure decree. The answer concluded as to
this allegation as follows, viz: "Wherefore as this re-
spondent is advised and believes, and so avers, that
neither the complainant nor his grantors or predecessors
could under the law become seized and possessed of
said lands adversely to the lien of said decree of De-
cember 20th, 1869, between the death of the said Mary
E. Coe and the appointment of her successor in Octo-
ber, 1890."

It is further alleged that it was not true in law that
the decree of December 20th, 1869, was permitted to
become stale and dormant, but on the contrary said
action of foreclosure has in law and equity been contin-
uously pending since its institution, and entitled to be
kept upon the dockets of this court, no final decree ever
having been rendered, and it has been continuously a
notice in law as *lis pendens* to all persons claiming or at-
tempting to occupy said lands involved in the suit with-
out the authority of the court.

It is admitted that the foreclosure proceedings were
omitted from the dockets of the court from and after
December 7th, 1877, and the papers in the case were
transferred to the judgment files, but it is averred that
such omission and transfer was without any motion to
that effect, or any order of court, or authority of law,
and did not operate against the validity of any subse-
quent proceedings, or any proceedings had theretofore.

It is also further alleged that Mary E. Coe, com-
plainant in the foreclosure suit, and the mother of re-

spondent, departed this life intestate on or about the 7th day of April, 1871, leaving no representatives in law competent or qualified to prosecute said suit to final determination until respondent, who is the only heir at law of Mary E. Coe and her intestate, W. E. Coe, was appointed administrator *de bonis non* as stated, and the greater part of the time laboring under the combined difficulties of orphanage, minority and poverty, having no guardian, estate or financial means with which to continue the administration dropped by his mother, and such disabilities of minority and poverty having been removed by time and his industry, he comes into court for the purpose of prosecuting said suit to final decree, and of settling up his intestates estate according to law; that said estate has no assets, except what will be derived from a sale of the lands in the foreclosure suit, and to enjoin the sale of the same would greatly hamper and impede respondent in his administration of said estate.

On the day of filing the answer counsel for respondent filed an affidavit that he had carefully examined the records of Jackson county relating to the title of complainant to the lands described in the bill of complaint and setting out what he found the records to show in reference to such lands. A motion was made to dissolve the injunction upon the answer and affidavit and thereafter the general replication to the answer was filed.

On March 16th, 1892, the motion to dissolve the injunction was denied, and on the 23rd day of the following month a petition for rehearing was filed. Subsequently, and after the expiration of the time for taking testimony, complainant set the cause down for hearing upon bill, answer and replication, and in 1893 the court denied the motion for rehearing on the application to dissolve, and rendered a decree perpetually enjoining respondent from selling or in any way interfering with

the lands claimed by complainant, to-wit:   N. W. 1-4
and S. W. 1-4 of section 16, township 3, R. 7, north and
west, situated in Jackson county, Florida, by virtue of
the decree of foreclosure of Mary E. Coe, administratrix,
vs. E. P. Hudson and F. W. Gilbreth, or otherwise.
From this decree the appeal is taken.

The other facts in the case are stated in the opinion
of the court.

*John H. Carter*, for Appellant.

*Benj. S. Liddon*, for Appellee.

MABRY, J.:

The decree appealed from in this case was rendered
on bill, answer and replication.   The bill alleges adverse
possession of the lands in question by Daniel Burnett
for more than seven years prior to their attempted sale
under a revived decree in favor of appellant, as adminis-
trator *de bonis non* of W. E. Coe, deceased, and against
E. P. Hudson and F. W. Gilbreth.

It is stated in bill that Dan'l Burnett held the lands in
question by a paper title particularly described and set
out, but it is not alleged that this paper title was of itself
a valid conveyance of the title, nor is there any basis,
furnished by said paper title, or the allegations of the
bill in reference to it, for a conclusion that complainant
relied upon such instruments as conveying of themselves
a valid and indefeasible estate.   If any more than we
have stated can be claimed under the allegations of the
bill as to the legal sufficiency of the paper title, it can not
avail on this hearing as the answer denies that Burnett,
or Griffin through whom he claims, ever had any legal

title to the lands. It is alleged, however, that for a period of more than seven years prior to the filing of the bill, Burnett maintained an adverse possession of the lands under the paper title as being a conveyance, and that such possession had been open, continuous and exclusive, and the answer concedes this to be true, as it distinctly admits that Burnett claimed title to the lands in the manner and from the sources alleged.

By statute in this State, seven years adverse occupancy of land, under conditions prescribed, confers title, and this title, when perfected, may be enjoyed and protected. Seymour v. Creswell, 18 Fla. 29. Basing a claim of title to the lands in Daniel Burnett by an adverse occupancy for the statutory period of seven years, the bill seeks to enjoin a sale under a decree of foreclosure in a suit originally commenced by Mary E. Coe, administratrix of W. E. Coe, deceased, against Hudson and Gilbreth, and revived in the name of appellant as administrator *de bonis non* of W. E. Coe, deceased. It is alleged and admitted, that the administratrix Mary E. Coe, obtained a decree of foreclosure in the suit on the 20th of December, 1869, and that there were proceedings to revive the decree on April 2nd, 1891, in the name of the appellant. The facts in reference to the revivor, so far as we can consider them on this appeal, are rather meager. The suit was against Hudson and Gilbreth, and we must assume in the absence of any showing to the contrary that the decree was regularly revived as to them. Whatever defences they may have had to the revivor proceedings should have been made then, and the rights acquired and obligations imposed under the revived decree, so far as the parties thereto are concerned, can not be questioned in a collateral way. Complainant, Daniel Burnett, is not shown to have been a party to the revivor proceedings and his assertion of superior right by ad-

verse occupancy is not only against Hudson and Gil-
breth, the holders of the legal title, but all others, in-
cluding the holders of the mortgage claim against them.
Counsel for appellees assume the position that an ad-
verse occupancy of the lands for seven years, a sufficient
period under the statute to bar the claim of right of Hud-
son and Gilbreth, will also bar all other. rights. This
contention can not be sustained under the former de-
cisions of this court. It has been held here that our
statute of limitations applies to equitable as well as legal
demands. Browne v. Browne, 17 Fla. 607, S. C. 35 Am.
Rep. 96; Jordan v. Sayre, 24 Fla. 1, 3 South. Rep. 329.
The tenth section of the limitation statute of 1872, sec-
tion 1294, Revised Statutes, contains a provision that
actions other than those for the recovery of real prop-
erty can only be commenced within twenty years on an
action upon any contract, obligation or liability founded
upon an instrument of writing under seal, and the same
provision is made in reference to actions upon a judg-
ment or decree of any court of the United States, or of
any State or Territory within the United States. By the
Revised Statutes the twenty-year limitation as to judg-
ments or decrees, applies only to judgments or decrees
of a court of record of this State. It was held in Browne
v. Browne that a suit in equity to sell land mortgaged
and apply the proceeds to the payment of a note secured
by the mortgage was an action upon a contract founded
upon an instrument in writing under seal, within the
meaning of the limitation statute, and that such suit
could be maintained in equity although an action at law
upon the note was barred by other provisions of the
statute. The decision in Jordan v. Sayre was that
when a mortgage is in law, as well as in equity,
simply a lien on the land, and gives no right of
possession of the same, the mortgagor's possession

during the period allowed by the statute for instituting a suit of foreclosure is not adverse to the rights of the mortgagee, but is subordinate thereto; and the same is true as to the possession of the mortgagor's grantee, although such grantee hold under covenants warranting the title. A mortgage on real estate, under our system of law, is nothing more than a lien on the land to secure the payment of money, and the mortgagee can maintain no action for possession until he becomes the owner at foreclosure sale. Cook v. Knowles, 38 Mich. 316. It is clearly the law with us, we think, that the limitation period of seven years adverse possession does not apply to a mortgage claim duly perfected.

It only remains to enquire if there be any other limitation of which appellees can avail themselves to enjoin the sale of the lands involved in this suit. It is conceded that a foreclosure decree was rendered in the case on the 20th of December, 1869. Such a decree, though considered the final decree in foreclosure for some purposes, is not a money adjudication in the sense of a judgment for money, but only a judicial ascertainment of the amount which the mortgage was intended to secure. Scott v. Russ, 21 Fla. 260; Hanover Fire Ins. Co. v. Tomlinson, 3 Hun, 630. The foreclosure decree did not terminate the suit, as it gave the complainant no right to the possession of the land, nor could he have execution thereon for the sale of any property. His right was to have the property described in the mortgage sold under the direction of the court to satisfy the mortgage debt, and he could acquire no rights in the land hostile to defendants in the foreclosure suit until he obtained a deed under the foreclosure sale. Rockwell v. Servant, 63 Ill. 424. The record presents the case of the revivor of a foreclosure decree before the final termination of the suit, and, as before stated, all questions of limitations or

defenses, as between the parties to the suit, must be con-
sidered as finally settled so far as the present suit is con-
cerned.   There are authorities which hold that the stat-
ute of limitations is a personal privilege, of which the
debtor alone can avail himself at his option.   Other
authorities hold that one who has acquired the legal title,
subsequent to the demand which may be barred by the
statute, may avail himself of such defense when sued in
the foreclosure of the equity of redemption, but, as held
in Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. Rep. 408,
though the subsequent purchaser, or one acquiring the
legal title, may set up the plea of the statute, it must he
shown that the action is barred as between the parties to
the debt, because as the owner of the equity of redemp-
tion it is that debt he has to pay.   Sanger v. Nightingale,
122 U. S. 176, 7 Sup. Ct. Rep. 1109.

Conceding that the appellees have the right to show
an absolute bar of the statute of limitations as between
the parties to the foreclosure suit at the time of the re-
vivor of the decree we are of opinion that there is an
absence of such showing in the record before us.   The
bill states that the foreclosure decree was rendered in
December, 1869, and that said decree was allowed to be-
come dormant, stale and antiquated until about the 2nd
of April, 1891, when appellant, as administrator *de bonis
non*, began proceedings to revive same for the purpose
of selling the lands under the decree.   In the face of the
order of a competent court reviving the suit against
Hudson and Gilbreth, it devolved upon the complainant
below to show that at the time of the revivor the suit
was barred, but the bill does not state that there was no
suspending cause of the statute intervening the rendition
of the decree in 1869, and the revivor in 1891.

In response to the charge in the bill in reference to
the foreclosure decree in December, 1869, the answer

J. M. Coe v. James A. Finlayson.—Opinion of Court.

states that the complainant therein, Mary E. Coe, died on the 7th of April, 1871, and no further action was taken in the cause until the order on April 2nd, 1891, appointing a master to carry out the foreclosure decree, and that neither the complainant nor his grantors could under the law become seized and possessed of the lands adversely between the death of Mary. E. Coe and the appointment of her successor in October, 1890; and that Mary E. Coe left no representatives in law competent or qualified to prosecute said suit to final determination until respondent was appointed administrator *de bonis non* as stated. From this statement it appears that the foreclosure suit was revived within twenty years from the death of the complainant, and that during this entire time, except from October, 1890, to April 2nd, 1891, there was no representative to proceed with the suit.

As a general rule a suit may be revived at any time before the cause of action is barred by the statute of limitations applicable, and in case of the abatement of the suit by the death of the plaintiff, the statute will not run until administration on his estate has been taken out. Perry v. Jenkins, 1 Mylne & Craig, 118; Mason v. Hartford, P. & F. R. Co., 19 Fed. Rep. 53; Story's Eq. Pl. §831. The general rule of construction is that a statute of limitations will not be held to run in the absence of a person in being who is capable of suing. Murray v. East India Co., 5 Barn. & Ald. 204. The original complainant, Mary E. Coe, died in April, 1871, before the enactment of the limitation statute of 1872, and at the time of her death the statute had not begun to run. When the suit was revived no bar of the statute had attached, and hence complainant below, who took possession of the land after the commencement of the foreclosure suit, failed to show a title by adverse posses-

sion against appellant as administrator *de bonis non* of W. E. Coe, deceased. We have proceeded on the hypothesis that it sufficiently appears from the pleadings that Mary E. Coe died in April, 1871, and administration *de bonis non* on the estate of W. E. Coe, deceased, was granted not earlier than some time in October, 1890. This view of the case is as favorable to appellees as can be taken; for if we can not proceed on the view that Mary E. Coe died then, there is nothing to show that the suit was not pending in the court from its institution, and there is no statute of limitation to a pending suit.

It is ordered that the decree appealed from be reversed, with directions to dismiss the bill.