805 So.2d 835 (2001)
Khalil BURSHAN, M.D., and Rosita Burshan, his wife, Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a foreign corporation authorized to do business in the state of Florida, Appellee.
No. 4D00-2909.
District Court of Appeal of Florida, Fourth District.
August 8, 2001.
*837 Russell D. Kaplan of Russell D. Kaplan, P.A., Fort Lauderdale, for appellants.
Peter V. Fullerton, and Charles M-P George of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Miami, for appellee.
GROSS, J.
The main issue in this case is whether Florida's statute of limitations barred a garnishment proceeding in a Florida federal court, when the writ was issued over 11 years after the underlying federal judgment. We hold that the statute did not foreclose the garnishment.
On November 17, 1987, National Union Fire Insurance Company of Pittsburgh obtained a $74,126.54 judgment against Khalil Burshan in the United States District Court for the Southern District of New York.
On July 29, 1993, National Union registered the 1987 judgment in the United States District Court for the Southern District of Florida. National Union re-registered *838 the judgment in the Southern District on November 10, 1998.
Upon National Union's motion, the clerk of the federal district court issued a writ of garnishment on February 16, 1999. The writ directed NationsBank, N.A. to answer whether it held tangible or intangible personal property of the judgment debtor, Khalil Burshan. NationsBank filed its answer and, in addition, froze three accounts: the "Dr. Khalil Burshan Wage Account," containing $30,069.22, and two accounts titled "Rosita Burshan ITF Khalil Burshan" holding a total of $9,895.44.
Burshan filed a defensive motion seeking (1) dissolution of the writ of garnishment, (2) a protective order barring post-judgment discovery, and (3) relief from judgment pursuant to Federal Rule of Civil Procedure 60(b).
The federal district court granted the motion in full. The court concluded that because a garnishment proceeding was an "action on a judgment" within the meaning of section 95.11(2)(a), Florida Statutes (2000), the Florida five year statute of limitations barred the 1999 garnishment, begun over 11 years after the issuance of the 1987 judgment. Relying on Balfour Beatty Bahamas, Ltd. v. Bush, 170 F.3d 1048 (11th Cir.1999), the district court held that under section 95.11(2)(a), National Union was "required to commence an action on the New York federal judgment within five years" after the 1987 entry of that judgment.
The federal judge observed that National Union had "waited more than five years and eight months to register the federal New York judgment on July 29, 1993." This language suggests that the district court found that the act of registration was an "action on a judgment" under section 95.11(2)(a).
On July 21, 1999, National Union appealed the district court's ruling to the Eleventh Circuit Court of Appeals. That court dismissed the appeal for want of prosecution in November, 1999.
On December 1, 1999, Khalil Burshan and his wife Rosita filed a seven count complaint in state court seeking damages arising from the federal court garnishment. National Union filed a lengthy motion to dismiss. The heart of its argument was that the writ of garnishment had been properly issued. The Burshans countered that collateral estoppel or res judicata barred re-litigation of the propriety of the writ of garnishment.
On June 12, 2000, the circuit court granted National Union's motion to dismiss with prejudice. The judge concluded that the federal district court had erred in its 1999 dismissal of the garnishment proceeding.

I. After its registration in the Southern District of Florida, the New York federal court judgment was subject to Florida state law regarding final process, such as execution and garnishment.
Under section 55.10, Florida Statutes (2000), a judgment becomes a lien on real property in a county when a certified copy of it is recorded in the public records of that county.[1] A judgment so recorded "shall be a lien for a period of 7 years from the date of the recording." § 55.10(1), Fla. Stat. (2000). The judgment lien may be extended for a 10 year period by rerecording *839 it pursuant to section 55.10(2).[2] No section 55.10 judgment lien may extend "beyond the period provided for in" section 55.081, which is "20 years from the date of the entry of such judgment, order, or decree." §§ 55.10(3), 55.081, Fla. Stat. (2000).
Execution is a final process to enforce a judgment. Fla. R. Civ. P. 1.570(a). "When issued, an execution is valid and effective during the life of the judgment or decree on which it is issued." § 56.021, Fla. Stat. (2000); Fla. R. Civ. P. 1.550(a). An execution is thus subject to the time limit of section 55.081; an "execution may be issued during the 20 year life of the judgment on which it is based." HENRY P. TRAWICK, JR., FLORIDA PRACTICE AND PROCEDURE § 27-1 (2000). An execution may be levied against various forms of property, such as lands, goods, chattels, equities of redemption in real and personal property, and stock in corporations. § 56.061, Fla. Stat. (2000). The lien of an execution attaches to personal property when the execution is delivered to the sheriff; the date of "delivery to the sheriff establishes the priority of execution liens for levy, sale and collection." TRAWICK, FLORIDA PRACTICE AND PROCEDURE § 27-1 (2000).
Like execution, a writ of garnishment is another type of final process to enforce a judgment. See Fla. R. Civ. P. 1.570(a). A judgment holder may obtain issuance of a garnishment writ by filing a motion "stating the amount of the judgment and that movant does not believe that defendant has in his or her possession visible property on which a levy can be made sufficient to satisfy the judgment." § 77.03, Fla. Stat. (2000).
In this case, National Union registered its judgment from the Southern District of New York with the Southern District of Florida. Under 28 U.S.C.A. § 1963 (2000), when a judgment is so registered, it "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." Registration thus gave the New York judgment the same effect as a judgment from the Southern District of Florida.
A judgment of a federal court sitting in Florida is a lien on property to the same extent as a judgment of a Florida court. See B.A. Lott, Inc. v. Padgett, 153 Fla. 304, 306, 14 So.2d 667, 668 (1943). 28 U.S.C.A. § 1962 (2000) provides:
Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time.
Thus, like a Florida judgment, a federal judgment becomes a lien on Florida property when it is recorded in a county's public records. 28 U.S.C. § 1962 provides that when state law requires a state judgment to be recorded in "a particular manner" before a judgment lien attaches, such a recording requirement applies to federal judgments only if a state law "authorizes" the recording of a judgment of a United States court. Section 28.222(3)(c), Florida Statutes (2000), authorizes a clerk of the circuit court to record a judgment entered "by a United States court having *840 jurisdiction in this state." See TRAWICK, FLORIDA PRACTICE AND PROCEDURE § 25-11 (2000).
A judgment creditor's use of process to enforce its federal judgment is controlled "by the practice and procedure of the state in which the district court is held...." Fed.R.Civ.P. 69(a). Garnishments and executions in a Florida federal court are thus subject to the practices and procedures of chapters 56 and 77, Florida Statutes (2000), respectively. The statute of limitations at section 95.11, Florida Statutes (2000), is also a matter of "practice and procedure" that the federal court must apply. See Balfour Beatty Bahamas, 170 F.3d at 1050.

II. The term "action on a judgment" as used in the statute of limitations denotes a specific common law cause of action.
Crucial to this case is the wording of subsections 95.11(1) and (2), which provide:
Actions other than for recovery of real property shall be commenced as follows:
(1) WITHIN TWENTY YEARS.
An action on a judgment or decree of a court of record in this state.
(2) WITHIN FIVE YEARS.
(a) An action on a judgment or decree of any court, not of record, of this state or any court of the United States, any other state or territory in the United States, or a foreign country.
(Italics supplied).
Since the nineteenth century, the phrase "action on a judgment" in the statute has had a precise meaning as a common law cause of action. The federal courts have interpreted the words broadly, resulting in too wide an application of the statute of limitations. The federal cases relied on Kiesel v. Graham, 388 So.2d 594 (Fla. 1st DCA 1980), where the change in the term's interpretation unfolded as an afterthought, without any recognition of what the phrase meant in early versions of the statute of limitations. Under a correct reading of the statute, neither the garnishment proceeding, nor the registration of the New York judgment under 28 U.S.C.A. § 1963 was an "action on a judgment" within the meaning of section 95.11(2).
Earlier versions of the statute of limitations made use of a phrase synonymous with "action on a judgment." In 1872, the legislature enacted chapter 1869, Laws of Florida; section 10 provided that an "action upon a judgment" had to be commenced "[w]ithin twenty years." Slaughter v. Tyler, 126 Fla. 515, 520, 171 So. 320, 322 (1936) (quoting chapter 1869, McClelland's Digest, Laws of Florida, p. 730); see Coe v. Finlayson, 41 Fla. 169, 26 So. 704, 707 (1899). A later version of the statute of limitations, section 2939, Revised General Statutes of Florida, similarly employed the term "action upon a judgment." See Van Deren v. Lory, 87 Fla. 422, 424, 100 So. 794, 795 (1924).
Section 95.11(2)(a) now uses the term "action on a judgment." Nothing in any subsequent revision of the statute of limitations indicates a legislative intent to change the meaning of the phrase by referring to an action "on a judgment" instead of "upon a judgment." The Florida Supreme Court has interchanged both terms. In Sammis v. Wightman, 31 Fla. 10, 33, 12 So. 526, 533 (1893), the court referred to an action filed in a Florida court on a New York judgment as "an action on a judgment." In Massey v. Pineapple Orange Co., 87 Fla. 374, 377, 100 So. 170, 171 (1924), the court used the statutory formulation, containing the preposition "upon."
Every judgment gives rise to a common law cause of action to enforce it, *841 called an action upon a judgment. In Crane v. Nuta, 157 Fla. 613, 615, 26 So.2d 670, 671 (1946), the supreme court held that section 95.11(1) did not bar a plaintiff in 1945 from bringing an action on a 1926 judgment. The court observed that "a judgment is regarded as a cause of action" and that there was
abundant support for, and nothing contrary to, the doctrine that a judgment, whether domestic or foreign, constitutes a cause of action upon which a new and independent action may be based.
Id. at 615, 26 So.2d at 671.
The "main purpose of an action on a judgment is to obtain a new judgment which will facilitate the ultimate goal of securing satisfaction of the original cause of action." Adams v. Adams, 691 So.2d 10, 11 (Fla. 4th DCA 1997). If a limitations period has almost run on a judgment, a judgment creditor "can start the limitation period anew by bringing an action on the judgment to obtain a new judgment." 47 AM.JUR.2D Judgments § 945 (1995); accord Adams, 691 So.2d at 11 (quoting Koerber v. Middlesex College, 136 Vt. 4, 383 A.2d 1054, 1057 (1978)). A party may not relitigate the merits of the original cause of action in an action on a judgment. See Klee v. Cola, 401 So.2d 871, 872 (Fla. 4th DCA 1981).

III. Florida Supreme Court cases have held that proceedings to enforce a final judgment are not "actions on a judgment" which are barred by the statute of limitations.
In B.A. Lott and Young v. McKenzie, 46 So.2d 184 (Fla.1950), the Florida Supreme Court drew a distinction between proceedings to enforce a final judgment and the common law action on a judgment.
To grasp the holding in B.A. Lott, it is necessary to first understand the function of a writ of scire facias. Scire facias was a writ to revive a judgment so that execution could issue. See Spurway v. Dyer, 48 F.Supp. 255, 258 (S.D.Fla.1942). At common law, the right to a writ of execution "existed for a year and a day, after which the judgment ... became dormant." Massey, 100 So. at 172. Section 2817, Revised General Statutes "extended the time within which an execution [might] issue upon a judgment as of course to three years." Id.; accord Spurway, 48 F.Supp. at 257-58 (interpreting the Act of 1844, section 4504, Complied General Laws of Florida (1927)). At the time Massey issued in 1924, a writ of scire facias revived a judgment and caused a writ of execution to issue after three years, but during the twenty year life of a judgment. Massey, 100 So. at 171-72. The supreme court characterized a "case of scire facias to revive a judgment" as
not an original but a judicial writ, founded on some matter of record, to enforce execution of it, and properly speaking is only the continuation of an action. A step leading to the execution of a judgment already obtained and enforcing the original demand for which the action was brought. It creates nothing anew, but may be said to reanimate that which before had existence, but whose vital powers and faculties are as it were suspended, and without its salutary interference would be lost.
Id. at 171 (quoting Brown v. Harley, 2 Fla. 159 (1848)).
In B.A. Lott, a judgment was entered in federal court against Dyer on June 26, 1933. Dyer acquired an interest in real estate in Dade County in October 1941. The judgment creditor recorded the judgment in Dade County on December 1, 1941. Dyer conveyed the land to a third party on December 15, 1941. In January 1942, the owner of the judgment moved in federal court to revive the decree so that *842 execution would issue. The motion was the federal practice equivalent of a scire facias proceeding. Michael G. Tanner, Federal Judgments in Florida Still Good after Five Years, 73 Fla. B.J. 63, 64 (1999). The district court granted the motion, execution issued, and the creditor acquired Dyer's interest in the real estate by marshal's deed. B.A. Lott, 14 So.2d at 668.
The Florida Supreme Court reviewed the case in the context of a partition action filed by the creditor, who had become a co-owner of the property. Id. An important issue was the enforceability of the federal judgment through which the creditor had acquired his interest in the property. The defendant in partition argued that the scire facias proceeding, which the creditor did not initiate until eight and a half years after the 1933 judgment, was barred by the seven year statute of limitations contained in section 95.11(2), Florida Statutes (1941).[3]Id. at 669. The wording of the 1941 statute is similar in material respects to section 95.11(2)(a), Florida Statutes (2000).
The supreme court held that the statute of limitations did not apply to bar the scire facias proceeding, since it was not "a new and independent action." B.A. Lott, 14 So.2d at 669. "Scire facias was not a new action but was only a step in the original cause of a remedial nature to effectuate the lien already in existence." Id. This holding is consistent with Massey's characterization of scire facias as a "continuation of an action" and a "step leading to the execution of a judgment already obtained." 100 So. at 171 (quoting Brown v. Harley, 2 Fla. 159 (1848)).
By "new and independent action," the supreme court in B.A. Lott was referring to the common law action on a judgment, which would have been barred by the statute of limitations. The common law action was the other remedy available, in addition to scire facias, to breathe life into the dormant 1933 judgment. As the supreme court observed in Massey:
The general rule ... is that if the plaintiff does not sue out his execution within the time of three years after the rendition of his judgment, he must, in order to obtain the fruits thereof, adopt either his common-law remedy, of an action upon the judgment, or a scire facias under the statute.
100 So. at 171 (quoting Jordan v. Petty, 5 Fla. 326 (1853)).
In Young v. McKenzie, the supreme court considered whether proceedings supplementary under sections 55.51-55.61, Florida Statutes (1941)[4] were an "action upon a judgment" under the statute of limitations contained at section 95.11, Florida Statutes (1941). The supreme court agreed with the trial judge "that the `proceedings supplementary' [did] not constitute `an action upon the judgment'" within the meaning of section 95.11. Young, 46 So.2d at 185. This ruling is significant, since proceedings supplementary are broader in scope than scire facias; a judgment creditor may use the former to reach assets in the hands of strangers to the original lawsuit.
*843 Both scire facias and proceedings supplementary are post judgment proceedings permitting a creditor to "effectuate" the judgment lien already in existence. B.A. Lott, 14 So.2d at 669. Unlike an action upon a judgment, neither procedure renews or extends the twenty year life of a judgment. The two proceedings are similar to those forms of final process described by Florida Rule of Civil Procedure 1.570(a) to assist a judgment creditor to "effectuate the lien" of the judgment. Scire facias relates to execution, a type of final process contemplated by rule 1.570(a).
A post judgment garnishment proceeding under chapter 77, Florida Statutes (2000), is another form of final process listed in rule 1.570(a). An extension of the original cause of action, its purpose is to collect on a judgment in existence. See, e.g., Goldenkoff v. Gen. Accident, 116 So.2d 780, 781 (Fla. 3d DCA 1960) (observing that "proceedings in garnishment are therefore ancillary to, and in the enforcement of, the final judgment rendered in the original cause").
We, therefore, hold that neither the 1999 garnishment proceeding nor the 1993 registration of the judgment under 28 U.S.C.A. § 1963 was an "action on a judgment" within the meaning of section 95.11(2)(a). The registration was to effectuate the lien of the New York judgment, to give it life in the southern district of Florida. In the language of B.A. Lott, the registration of the judgment was not a "new and independent action," but only a step in its collection.[5]
We certify conflict with Kiesel v. Graham, 388 So.2d 594 (Fla. 1st DCA 1980). There, the plaintiffs obtained a judgment in a Florida federal court against the State of Florida, Department of Natural Resources and its agent. Over five years later, the plaintiffs filed a petition for writ of mandamus in Leon County to compel payment. The first district held that the mandamus proceeding was barred by the five year statute of limitations applicable to "an action on a judgment or decree of... any court of the United States." Id. at 595 (quoting section 95.11(2)(a), Florida Statutes (Supp.1974)).
Without any analysis, Kiesel concluded that the mandamus proceeding was an "action on a judgment." Kiesel, 388 So.2d at 595. The case construed the term in a historical vacuum; it did not mention, much less distinguish either B.A. Lott or Young. Kiesel did not consider that an "action on a judgment" was a common law cause of action that extended the life of a judgment.
The Kiesel plaintiffs attempted to use mandamus as a collection mechanism. To paraphrase the film Jerry Maguire, the Kiesel plaintiffs wanted a writ of mandamus to force the state to "show them the *844 money." In this regard, the writ of mandamus was not a "new and independent action," but was like other collection devices contemplated by Florida law, such as scire facias, garnishment, proceedings supplementary, or discovery in aid of execution. While mandamus in Kiesel may have been objectionable as a collection device on some other ground, it was not an "action on a judgment" within the meaning of section 95.11(2)(a).
National Union attempts to distinguish Kiesel by arguing that unlike garnishment, mandamus was a new and independent action subject to the statute of limitations. However, the use of mandamus proceedings in Kiesel was more analogous to the proceedings supplementary at issue in Young. Also, mandamus is not the common law action on a judgment to which section 95.11(2)(a) refers.
For similar reasons, we disagree with the eleventh circuit's conclusion that post judgment discovery in aid of execution was an action on a judgment under section 95.11(2)(a). See Balfour Beatty Bahamas, 170 F.3d at 1050-51. That case relied primarily on Kiesel, without reference to the earlier cases from the Florida Supreme Court. The post judgment discovery at issue in Balfour Beatty Bahamas interrogatories and subpoenas duces tecum are the type permitted by Florida Rule of Civil Procedure 1.560. In the words of earlier cases, such discovery is not a "new and independent action," but only a "step leading to the execution of a judgment already obtained." B.A. Lott, 14 So.2d at 669; Massey, 100 So. at 171-72.
Finally, we disagree with In re Kilby, 196 B.R. 627 (Bkrtcy.M.D.Fla.1996), which held that a garnishment proceeding was an action on a judgment under section 95.11(2)(a). Kilby relies primarily on Kiesel. The opinion also states the proposition that the "statute limiting the period for actions on judgments of courts of record applies to an action by a garnishee." Kilby, 196 B.R. at 629 (quoting 33 Fla. Jur.2d Judgments & Decrees § 374 (1994), which cited Norwich Union Indem. Co. v. Willis, 127 Fla. 238, 168 So. 418 (1936)). The applicable holding of Norwich Union was that a writ of garnishment could issue only during the twenty year life of the judgment, beginning when a motion for new trial was denied, not that a shorter statute of limitations applied to garnishment. Norwich Union, 168 So. at 421.

IV. Estoppel does not preclude National Union from having a Florida court evaluate the propriety of the garnishment, in the context of ruling on malice and probable cause, elements of several of the causes of action.
The Burshans argue that the doctrine of estoppel by judgment precluded the trial court from reconsidering the application of Florida's statute of limitations to the garnishment proceeding in federal court. See Mobil Oil Corp. v. Shevin, 354 So.2d 372, 374 (Fla.1977); Shearson Hayden Stone, Inc. v. Seymour, 356 So.2d 834 (Fla. 1st DCA 1978).
The Burshans' complaint contains causes of action different than the garnishment proceeding dismissed in federal court. Where the causes of action in two suits are different, "the judgment in the first suit only estops the parties from litigating in the second suit issues which were actually adjudicated in the prior litigation." Shearson Hayden Stone, 356 So.2d at 836.
Two counts in the complaint in the present suit attempted to state a claim for wrongful garnishment. The principles governing a common law[6] action for the *845 wrongful issuance of a garnishment writ "are those common law principles applicable to actions for malicious prosecution." Iowa Mut. Ins. Co. v. Gulf Heating & Refrigeration Co., 184 So.2d 705, 706 (Fla. 2d DCA 1966), quashed on other grounds, 193 So.2d 4 (Fla.1966). As with the tort of malicious prosecution, two of the necessary elements of a cause of action for wrongful garnishment are (1) an absence of probable cause for such proceeding, and (2) the presence of legal malice, which "may be inferred entirely from a lack of probable cause." Adams v. Whitfield, 290 So.2d 49, 51 (Fla.1974); see Iowa Mutual, 184 So.2d at 706; Strickland v. Commerce Loan Co. of Jacksonville, 158 So.2d 814, 816 (Fla. 1st DCA 1963). Legal malice may also be inferred from "gross negligence, or great indifference to persons, property, or the rights of others." Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1357 (Fla. 1994).
Crucial to the determination of probable cause and legal malice is the state of the law at the time National Union caused the writ of garnishment to issue. Even if the federal court's application of the statute of limitations were correct, National Union could demonstrate that at the time it sought the writ, a reasonable interpretation of Florida law allowed it to pursue garnishment. In this case such a showing nullifies the necessary element of malice, since it establishes probable cause to initiate the garnishment as a matter of law.
More than just a reasonable interpretation of Florida law justified National Union's use of garnishment in February 1999. As we have held above, section 95.11(2) does not bar the garnishment proceeding in federal court, based on B.A. Lott and Young. The writ of garnishment was issued over one month before Balfour Beatty Bahamas was decided on March 25, 1999. In 1996, the eleventh circuit certified a question, concerning application of section 95.11 arising out of the United States District for the Northern District of Florida; the question asked "what is the appropriate statute of limitations for an action brought in a federal court in Florida involving a judgment entered by that same court?" Leasco Response, Inc. v. Wright, 99 F.3d 381, 383 (11th Cir.1996).
Thus, at the time National Union caused the writ of garnishment to issue, it had ample probable cause to pursue that method of collection. The trial court properly dismissed the wrongful garnishment and malicious prosecution counts insofar as they were premised on the federal court's application of the statute of limitations to dismiss the garnishment.
For similar reasons, we affirm the dismissal of the abuse of process count. Since National Union had probable cause to pursue garnishment, as a matter of law, there could not have been an illegal, improper, or perverted use of process, an essential element of abuse of process. See Della-Donna v. Nova Univ., Inc., 512 So.2d 1051, 1055 (Fla. 4th DCA 1987); Cline v. Flagler Sales Corp., 207 So.2d 709, 711 (Fla. 3d DCA 1968).

V. The trial court properly dismissed the conversion, trespass, and "wrongful act" counts for failure to state a cause of action.
We affirm the dismissal of the conversion count. National Union never "exercised a positive, overt act or acts of dominion or authority" over the money in the bank accounts. Armored Car Serv., Inc. v. First Nat'l Bank of Miami, 114 So.2d 431, 434 (Fla. 3d DCA 1959). National Union never took possession of the money; at all times it stayed in the Burshans' *846 accounts. See Allen v. Gordon, 429 So.2d 369, 371 (Fla. 1st DCA 1983). "The requirement that ... money be identified as a specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally." Belford Trucking Co. v. Zagar, 243 So.2d 646, 648 (Fla. 4th DCA 1970).
We affirm the dismissal of the trespass count, because a bank account is not a chattel which can be the subject of a trespass. "Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." Coddington v. Staab, 716 So.2d 850, 851 (Fla. 4th DCA 1998). The word "chattels" is defined as:
Every species of property, movable or immovable, which is less than a freehold. * * * Personal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another.
Curington v. State, 80 Fla. 494, 86 So. 344, 345 (1920) (quoting 1 BOUVIER'S Law Dictionary 315). A survey of Florida law reveals that the trespass cause of action has been applied to chattels such as a black mare,[7] logs,[8] a wagon and mule,[9] clothing,[10] crates of pears,[11] and an automobile,[12] but never to a bank account.
We affirm the dismissal of the action for damages under the wrongful act doctrine. "The wrongful act doctrine does not create an independent cause of action; instead, it allows a claim for attorney's fees as special damages" in certain circumstances. State Farm Fire & Cas. Co. v. Pritcher, 546 So.2d 1060, 1061-62 (Fla. 3d DCA 1989).
Certain aspects of the lawsuit below were based on (1) Rosita Burshan's claim that her accounts should not have been garnished because she was not a party to the New York judgment, and (2) National Union's failure to release the writ after becoming aware of the ownership of the garnished bank accounts. We reverse the dismissal of Rosita Burshan's claims. On remand, she shall be given leave to file an amended complaint consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
POLEN, C.J., and STONE, J., concur.
NOTES
[1] At common law a judgment did not operate as a lien on a debtor's real estate. Spurway v. Dyer, 48 F.Supp. 255, 257-58 (S.D.Fla.1942) (containing a detailed discussion of the development of the law in this area). The Florida Supreme Court has described Spurway as an "able opinion order." B.A. Lott, Inc. v. Padgett, 153 Fla. 304, 14 So.2d 667, 669 (1943).
[2] Chapter 2000-258, § 7, at 6-8, Laws of Florida, rewrote section 55.10. The prior version of the statute allowed the extension of a judgment lien for two additional seven year periods by rerecording, subject to the limitation that no lien created by section 55.10 could extend "beyond the period provided for in s. 55.081." § 55.10(4), Fla. Stat. (1999); see § 55.10(2)-(3), Fla. Stat. (1999).
[3] Section 95.11(2), Florida Statutes (1941), provided:

95.11 Limitations upon actions other than real actions.Actions other than those for the recovery of real property can only be commenced as follows:
. . . .
(2)WITHIN SEVEN YEARS.An action upon a judgment or decree of any court of the United States, or of any state or territory within the United States, or of any foreign country.
[4] Section 56.29, Florida Statutes (2000), is the current version of the proceedings supplementary statute.
[5] In Muka v. Horizon Financial Corp., 766 So.2d 239 (Fla. 4th DCA 2000), we held that an attempt to register a dormant and unrevived judgment of another state under the Florida Enforcement of Foreign Judgments Act, §§ 55.501-55.509, Fla. Stat. (1999), was an "action on a judgment" subject to the bar of the statute of limitations of section 95.11(2)(a). We analogized such a situation to "bringing an entirely separate action on a judgment." Muka, 766 So.2d at 241. We did not decide in Muka, and do not reach in this case, whether an attempt to register a valid judgment under the Act would be an "action on a judgment" within the meaning of section 95.11(2)(a). On the one hand, one function of the common law action was to domesticate a foreign judgment. See, e.g., Sammis v. Wightman, 31 Fla. 10, 12 So. 526, 530 (1893). Section 55.502(4) provides that nothing in the Act "shall be construed to alter, modify, or extend the limitation period applicable for the enforcement of foreign judgments." On the other hand, as we noted in Muka, registration under the Act does not create a new judgment which starts the limitation period anew.
[6] We find no basis for a statutory cause of action predicated on a failure to comply with some portion of chapter 77, Florida Statutes (2000).
[7] Davidson v. Floyd, 15 Fla. 667 (1876).
[8] Wright v. Terry, 23 Fla. 160, 2 So. 6 (1887).
[9] Florida Packing & Ice Co. v. Carney, 51 Fla. 190, 41 So. 190, 191 (1906).
[10] Wolkowsky v. Garfunkel, 65 Fla. 10, 60 So. 791 (1913).
[11] Atlantic Coast Line R. Co. v. Partridge, 58 Fla. 153, 50 So. 634 (1909).
[12] Johnson v. Florida Brewing Co., 90 Fla. 148, 105 So. 319 (1925); C.I.T. Corp. v. Brewer, 146 Fla. 247, 200 So. 910 (1941).