WALLIS, J.,
concurs in part, dissents in part, with opinion.
I respectfully dissent only from the portion of the majority opinion that reverses Former Wife’s entitlement to corporate distributions from Apex during the period between the entry of the Original Judgment and the sale of the marital home. The majority concludes based upon language in the settlement agreement and the Original Judgment that Former Wife agreed to waive any entitlement to corporate distributions; however, no such language exists. During the marriage, the parties were equal shareholders in Apex. The trial court’s oral ruling provided that “[ujntil the sale of the marital home [Former Husband] and [Former Wife] will each be fifty percent owners of Apex.” Former Wife’s one-half ownership of Apex was also announced during the settlement agreement, with no objection from either party. Thus, I think Former Wife, as a shareholder of Apex, was entitled to fifty percent of the corporation’s distributions between the entry of the Original Judgment and the sale of the marital home.
I find no ambiguity in the language of the Original Judgment concerning the ownership and eventual transfer of Former Wife’s Apex stock. Accordingly, I find no need to examine parol evidence of the parties’ anticipated quick sale[5] of the marital home or of an implied agreement that Former Wife would no longer receive corporate distributions. I disagree with the majority’s decision to distinguish this case from Zold v. Zold, 880 So.2d 779 (Fla. 5th DCA 2004), affirmed in part, vacated *1053 in part, 911 So.2d 1222 (Fla.2005). The majority accurately characterizes the factual circumstances of Zold and notes the differing situation in the instant case, but unpersuasively demonstrates a need to limit the holding in our previous opinion to the determination of corporate income attributable to a stockholder. Zold ⅛ direct effect on the present case is clear that “[o]nce the distributions are found to be possible, the distributions must be pro-rata in accordance with the percentage ownership of the capital stock of the corporation.” Id. at 781.
The majority cites to Little v. Caswell-Doyle-Jones Corporation, 805 So.2d 842, 844 (Fla. 1st DCA 1975), as support for Former Wife receiving an unequal distribution of the corporate profits. The Little decision is distinguishable from our case. In Little, the stockholders’ agreement contained a “clear and concise” provision for unequal distributions; however, no such provision exists in our case. Additionally, the record does not show that the parties agreed — explicitly or implicitly — to divest Former Wife of her right to equal corporate distributions from Apex. Absent such an agreement, Former Wife was entitled to pro-rata distributions until the timely transfer of her ownership in Apex.
The “accounting practices” referred to by the majority further substantiate the parties’ expectation that Former Wife was entitled to corporate distributions from Apex. Apex’s tax documents attributed fifty percent of the yearly distributions to Former Wife for taxation purposes. Conspicuously, Apex’s balance sheets reflected markedly unequal payments to the parties, categorizing the payments to Former Wife as “distributions” until the end of 2008. Suspicion concerning Former Husband’s accounting practices is further heightened by Apex’s company accountant’s testimony that Former Husband attempted to retroactively “reclassify” payments from Apex as “loans,” without any documents to substantiate the terms of said loans.
Finally, the fact that Former Wife did not participate in the management of Apex during the period between the Original Judgment and the sale of the marital home has no impact on her rights to pro-rata corporate distributions. Previous case law from our court is clear that directors of closely held corporations have a fiduciary duty to not use their control of the corporation to their own advantage against other stockholders. Tillis v. United Parts, Inc., 395 So.2d 618, 619 (Fla. 5th DCA 1981). Here, the trial court made specific findings that “[b]oth parties ha[d] substantially contributed to the marriage,” noting that Former Wife’s full-time employment during the early years of the marriage enabled Former Husband to build Apex into a successful business. Neither party challenged the fact that Former Wife’s efforts helped to make Apex a company valued at $5,000,000 at the time of the Original Judgment. To expect Former Wife to continue to work alongside her then ex-husband in a capacity different from her marital contribution, following a contentious divorce, is unrealistic.
For the previously stated reasons, I would affirm the lower court’s ruling that Former Wife was entitled to one-half of all corporate distributions made by Apex between entry of the Original Judgment and the sale of the marital home.

. Some evidence alluded to the parties' expectation that the marital home would sell quickly. The parties did not, however, create any deadline for the sale of the marital home or for the periodic alimony payable until the sale.